# WHEELING.

FINDLEY *v.* ARMSTRONG *et als.*

| 23 | 113 |
|----|-----|
| 39 | 307 |
| 39 | 642 |
| 23 | 113 |
| 46 | 307 |

Submitted June 19, 1883—Decided December 8, 1883.

1. A vendor in writing agrees to sell to a vendee a tract of land, for which the vendee is to pay a certain price, a portion of which is to be paid in cash at a future day, and then the vendee is to give his notes for the balance of the purchase-money payable on time, and when these notes are given, the vendor is to make to the vendee a deed with covenants of general warranty of title, but nothing is said about a reservation in the deed of the vendor's lien or about any security being given for the deferred payment of the purchase-money. HELD :

When the deed is executed, the vendor has a right to insert in it a clause reserving a vendor's lien for the unpaid purchase-money. (p. 121.)

2. A vendor agrees in writing to sell to a vendee two hundred and thirty acres of land, and in the contract there is inserted this clause : "The coal and coal-privileges in the land west of Birch run heretofore sold and deeded are reserved. All the coal on that side has been sold and conveyed. The coal and all the coal in the land east of Buck run, and all the necessary and desired coal-privileges are also hereby reserved." When the vendor executes a deed in carrying out this contract he can not insert in it a reservation, whereby he reserves "a right to remove on and through this tract of land the coal of coterminous tracts of land owned by the vendor." (p. 122.)

3. In construing this clause of this contract parol evidence is not admissible to show, that, when the parties made this contract, the vendor owned coterminous lands, which would be much depreciated in value, unless the coals on them could be removed through this tract, and the vendee, when he purchased, knew this. (p. 126.)

Green, Judge, furnishes the following statement of the case :

On the 5th day of April, 1879, Adolphus Armstrong, James O. Watson and John H. Kunst, executor of George H. A. Kunst, entered into a written contract with one Martin L. Shields of which the following is a copy :

"A contract between A. Armstrong, James O. Watson and John H. Kunst, executor of George H. A. Kunst, deceased, of the one part, and Martin L. Shield, of the other part.

The parties of the first part sell to said Shields all their Martin B. Sinsel land, on Buck run in Taylor county, the mill lot of about one and a fourth acres, and the Dearing lot of one acre not included. The land hereby sold is believed to contain two hundred and thirty acres, but an accurate survey and plat is to be made and true quantity ascertained, for which Shields is to pay twenty-five dollars per acre, with interest from this day to be paid, three hundred dollars last day of next October, and residue in seven equal annual payments from now, with interest on all the payments from now. As soon as survey made and quantity ascertained, notes to be given and deed made, the deed to be a deed with covenants of general warranty of title, and to be executed by said Armstrong, Kunst and Watson. The coal and coal privileges in the land west of Buck run, heretofore sold and deeded, are reserved. All the coal on that side has been sold and conveyed. The coal and all the coal in the land east of Buck run, and all the necessary and desired coal privileges are also hereby reserved. But said Shields is to have one acre only of the coal in the land east of the run for the use of the land, which acre shall be laid off in such shape and place as is or may be most convenient or beneficial to said Shields and the other parties hereto. Possession of the land to be given now, but Wyckoff is to have leave to move his stock, hay, &c., off. Wyckoff's time is now out, ended 20th March, last. Parties of first part to pay for survey and deed, Shields to pay the taxes for year 1879.

"Witness our hands (Armstrong acts as Watson's agent.)

"A. Armstrong,

"*For himself and as agent for James O. Watson,*

"John H. Kunst,

"*Executor, &c.*

"Martin L. Shields."

Shortly thereafter, on the 30th day of April, 1879, Shields agreed with Charles W. Findley, that he should assume all the obligations of said Shields in said contract, and in consideration thereof he was to have the lands to be conveyed to Shields by this contract and all the benefits, to which Shields was entitled by this contract. Charles W. Findley being simply by this arrangement substituted for Shields in said

contract with the written assent of all the parties thereto as well as Charles W. Findley. This was effected by a written endorsement on the contract, which was as follows:

"We, Martin L. Shields and Charles W. Findley, contract thus: Shields sells the within land to Findley according to the within contract. Findley is to pay the purchase-money, interest and taxes, as within named, and is to let Shields entirely out in all respects, and take his place in all respects, and Armstrong, Kunst, Watson and Shields do cancel the within contract as to Shields and take Findley in Shields' place in all respects; which said Findley agrees to and to stand in Shields' place as fully as if the within contract originally made with said Findley.

"Witness our hands and seals, this 30th April, 1879.

"MARTIN L. SHIELDS,    [SEAL.]
"C. W. FINDLEY,    [SEAL.]
"JOHN H. KUNST, *Exor.*,    [SEAL.]
"A. ARMSTRONG,    [SEAL.]
"*For himself and Jas. O. Watson.* [SEAL.]"

The land was surveyed and found to contain two hundred and thirty acres. Charles W. Findley paid the taxes thereon and the three hundred dollars named in the agreement, and two payments of seven hundred and seventy-eight dollars and fifty-seven cents with accrued interest; and the other parties to said agreement tendered to him, in what they considered a compliance with their agreement, the following deed:

"This deed, made January 20, 1881, between John H. Kunst, executor of the will of George H. A. Kunst, deceased, and Adolphus Armstrong and James O. Watson, of the one part, and Charles W. Findley, of the other part, all of the county of Taylor and State of West Virginia, except Watson, and he of Marion county, in said State, witnesseth:

"That said Kunst, as executor, Armstrong and Watson do grant to said Charles W. Findley all that certain tract of land, describing it by metes and bounds, containing two hundred and thirty-two acres, one rod and twelve poles, but from which is excepted and reserved from this conveyance one acre, one rod and twelve poles laid off around and including the old saw and grist mill; and also the one acre

sold and deeded by Martin B. Sinsel to Washington Dearing, and on which the widow of said Dearing now resides. The said mill lot is bounded thus: Beginning at a small hickory bush; thence N. 58 E. 12 poles to a stone; thence S. 32 E. 17 68-100 poles to a stone; thence S. 58 W. 12 poles to a stone; thence N. 32 W. 17 68-100 poles to the beginning; and the Dearing lot is bounded and described as in the deed to said Dearing, which is now on record in said Taylor county court clerk's office. After deducting said one acre, one rood and twelve poles, the mill lot and said Dearing one acre, leaves conveyed by this deed two hundred and thirty acres; and there is also excepted and reserved from this deed and conveyance all the stone coal and coal of every kind and description underlying or contained within said two hundred and thirty acres of land, and the exclusive right forever to have, obtain and remove said coals from, on and through the land, and to remove on and through the land the coals of coterminous tracts of land, and the right forever to enter in and upon said land, and there to do and perform all such work and acts as may be necessary to conveniently mine, obtain and remove all said coals from and through the land, but the coals on the west side of Buck run shall not be removed over the top or surface of the land. The said Charles W. Findley shall, however, have one acre of the coal in that part of the land on the east side of Buck run, but no more, and it shall be laid off in such shape and place as is or may be most convenient or beneficial to said Fidley and the other parties to this deed. The consideration for the conveyance made by this deed is twenty-five dollars per acre for the two hundred and thirty acres of land conveyed, which amounts to five thousand seven hundred and fifty dollars, and all which bears interest from April 5, 1879, till paid, and three hundred dollars of which, with its interest, was to have been paid on the last day of October, 1879, and the residue, with its interest, to be paid in seven equal annual payments from April 5, 1879; but the whole of said consideration of five thousand seven hundred and fifty dollars, with its interest, is unpaid, and for the payment of all which, the vendors' lien is retained on the said two hundred and thirty acres of land which is hereinbefore described

and conveyed; and all of said purchase-money and its interest, by agreement of the grantors hereinbefore named, is to be paid by said Charles W. Findley to said Kunst, as executor as aforesaid, and to said Armstrong.  And said Kunst, as executor as aforesaid, and said Armstrong and Watson covenant that they will warrant the land hereinbefore granted generally, except only as to the reservations and stipulations hereinbefore stated, but the vendor's lien is retained as aforesaid.

"Witness the following signatures and seals:

"JOHN H. KUNST, *Exor.*,     [SEAL]
"A. ARMSTRONG,     [SEAL]
"JAS. O. WATSON,     [SEAL]"

This deed was thus tendered on the 11th day of February, 1881; and there is a dispute as to what then occurred.  Charles W. Finley asserts that he took it to examine and to be examined by his counsel with the understanding that if found to be right, he would retain it, and if not found right, he would reject it.  But when so examined, it was found to contain reservations not authorized by said contract, the obnoxious reservation being: "The right to remove on and through this land the coals of coterminous tracts of land."  That and the retention of the vendor's lien on said tract of land for the unpaid purchase-money, it was claimed, were not authorized by this agreement.  The other parties to this contract insisted, that when this deed was tendered by them on the 11th day of February, 1881, the said Charles W. Findley accepted it, took possession of it and carried it away with him and is therefore precluded now from making any complaint about this deed.  They claimed too that it was in accordance with the terms of the agreement and refuse to execute any other deed.  Thereupon on the first Monday in June, 1881, Charles W. Findley filed his bill in the circuit court of Taylor county against all the other parties to this contract, setting out the above facts according to his version and understanding of them and praying that "the court will decree to the plaintiff a deed in strict accordance with said contract omitting therefrom the parts above complained of and grant the plaintiff such further and general relief, as he may be entitled to."

This bill was demurred to by Shields and by all the other defendants. All the other defendants filed their joint answer, in which they admit all the facts above stated except those which are subject of dispute, as to what occurred at the times that they tendered their said deed to Charles W. Findley, and in reference thereto they give their version of the matter as above stated, and they claim that this is the only deed Charles W. Findley is entitled to under his contract. The depositions, which were taken, will be given in the opinion, so far as they are deemed necessary. On the 27th day of July, 1882, the circuit court of Taylor county rendered the following final decree:

"This cause came on this day to be heard upon the bill, process duly executed on the defendants, the cause regularly matured at rules, the joint demurrer of Armstrong, Watson and Kunst, separate demurrer of Martin L. Shields and joinder in said demurrers, the joint answer of said Armstrong, Watson and Kunst and general replication thereto, depositions and exhibits, and was argued by counsel. On consideration whereof, said demurrers are overruled, and the court being of opinion that the plaintiff is entitled to a specific execution of the contract filed with his bill marked "Exhibit AA," and to have a deed of conveyance of said two hundred and thirty-two acres, one rood and twelve poles of land in the bill and proceedings mentioned, with covenants of general warranty, except as against the unpaid purchase-money, and being also of the opinion that the deed filed in the papers of this cause from Armstrong, Kunst and Watson to the plaintiff, dated January 20, 1881, is not such deed as the plaintiff is entitled to have by virtue of said contract, because it reserves to the said Armstrong, Watson and Kunst the right "to remove on and through the said two hundred and thirty-two acres, one rood and twelve poles tract of land the coals of coterminous tracts of land, it is therefore adjudged, ordered and decreed that said Armstrong, Watson and Kunst do execute a good and sufficient deed to the plaintiff for said land, with covenants of general warranty, retaining a lien for the unpaid purchase-money, omitting and leaving out of said deed the words, "and to remove on and through the land the coals of coterminous

tracts of land," and conforming said decree in all respects to the terms of said contract, which deed so made shall be filed in the papers of this cause within sixty days from the adjournment of this court. And it is further adjudged, ordered and decreed that unless said deed be so executed and filed within sixty days as aforesaid, Benjamin F. Martin, who is hereby appointed a special commissioner for the purpose, shall execute and file in the papers of this cause a deed on behalf of said Armstrong, Watson and Kunst according to said contract, omitting therefrom the right of reservation 'to remove on and through the land the coals of coterminous tracts of land,' conforming said deed in all respects to the terms of said contract. And it is further adjudged, ordered and decreed that the plaintiff recover against defendants, Armstrong, Watson and Kunst, his costs in this suit expended."

From this decree all the defendants in said cause have obtained an appeal and *supersedeas.*

*M. H. Dent* for appellants.

*Martin & Woods* for appellee.

GREEN, JUDGE:

The circuit court in its decree proceeded on the assumption, that the plaintiff Charles W. Findley was not precluded by an acceptance of the deed, which had been tendered him, from now in this cause demanding such a deed, as by their contract the defendants other than Shields were bound to make to him. James W. Findley was present when this deed was tendered; and he states the transaction as occurring thus: "Armstrong read the deed to Charles W. Findley, and Findley objected to taking the deed saying that the deed reserved more coal-privilege than the title-bond; and thereupon Armstrong talked a good while trying to explain it, saying it did not reserve as much privilege as the title-bond; but Findley objected to taking the coterminous coal over the surface of his land, but finally said that he would take the deed and have his lawyers Martin and Woods examine it, and if found right, it would be all right. Armstrong agreed

that day, that if it was not all right, he would make it all right, saying he did not want to take any advantage of Findley." Charles W. Findley made a similar statement to that made by his brother.

One Chapin who was present on this occasion states, that the plaintiff accepted the deed of Armstrong and paid a part of the purchase-money and executed his notes for the balance, and he states no particulars. Armstrong states, that the plaintiff took the deed into his possession and carried it away. After he took the deed, he made his first payment on the land and executed his notes for the remainder. This he had declined to do, till he got his deed. He says, as the plaintiff left his office, he, Armstrong, told him to take the deed to the clerk's office and have it recorded in time for the land to go on the tax-books in his name that year. Several weeks after he returned the deed, said he had had it examined by his lawyer, and he wanted me to change the deed so as to require that the coterminous coal should only be removed through the land sold him under the surface of it. He subsequently left the deed with Armstrong in his office, in order that it might be examined and the desired changes considered, and he never afterwards returned to get it. But Armstrong admitted that the day the deed was tendered "Charles W. Findley did not seem well satisfied with the deed as to the coal-privileges in any respect."

Kunst, another defendant who was present, admits that "Charles W. Findley objected to the coals being removed from this tract over the surface at certain points but said he did not remember about the coterminous coal. There was very little said that day about coterminous coal." But he and Armstrong both say, that there was no understanding or reservation that Findley might return the deed.

This was all the evidence on this question about the acceptance of this deed by Charles W. Findley. And as from the testimony of all the witnesses it is obvious that he was not satisfied with this deed when tendered, my conclusion is that the statement made by him and his brother is true, viz: that it was taken by him with the understanding, that before final acceptance it would be submitted to his counsel, who would compare it with the agreement, which

was still retained by Charles W. Findley, and see whether it was right. And as on such comparison this deed was disapproved of, I think that the circuit court did not err in holding, as it did in effect, that the plaintiff Findley was not by what had passed precluded from demanding such a deed, as by his contract he was entitled to receive.

This question I propose now to consider. According to the pleadings in this cause, by which we must be governed in determining the questions in controversy, there appear to be but two points of controversy. The first is: Had the defendants, who are to make this deed to the plaintiff, a right to reserve in it a vendor's lien for the unpaid purchase-money for the tract? The counsel for the appellee insists, that the defendants expressly agreed to convey the two hundred and thirty acres of land to the plaintiff with general warranty of title upon his paying on the land three hundred dollars in cash and giving his notes for the balance of the purchase-money payable in seven equal annual payments, each note bearing interest from date; and, as this has been done by the plaintiff, the cash and more than the cash paid, and the notes executed, that by the express terms of this agreement the plaintiff is entitled to a deed with general warranty of title, and the grantors have no right to retain a vendor's lien, as they did not in their contract stipulate therefor. But these views are, I apprehend, based on a misconception of a vendor's lien. It is not a lien, which a vendor by contract reserves on the land, when he agrees to sell it. On the contrary it is based upon this principle, as laid down by Eldon in the leading case of *Mackreth* v. *Symmons*, 15 Ves. 329 (White and Tudor's Leading Cases in Equity, vol. 1, pt. 1, side page 297 to page 453.) "A person having got the estate of another shall not as between them keep it and not pay the consideration; and there is no doubt, that a third person having full knowledge, that the other got the estate without payment, cannot maintain, that though a court of equity will not permit him to keep it, he may give it to another person without payment." In another part of the same opinion he states the law in a manner, in which it has since been recognized, wherever the vendor's lien has continued to have an existence: "That the vendor's lien

exists, unless an intention—and a manifest intention, that it shall not exist, appears." And where the vendor had not made a deed, he is entitled to retain a vendor's lien, though when the land was sold, he took personal security for the purchase-money and did not expressly contract for a retention of the vendor's lien. (*Hatcher's Adm'r* v. *Hatcher's Ex'or*, 1 Rand. 53; *Dunlap's Ex'or* v. *Shanklin's Ex'or et al.*, 10 W. Va. 662; *Warren et al.* v. *Branch et al.*, 15 W. Va. 38.

There was in this contract of sale, which we have given at length in the statement of the case, nowhere any manifestation of an intention, that the vendor's lien should exist, much less did a "manifest intention that the vendor's lien should not exist appear." I am therfore of opinion, that the circuit court did not error in directing in its final decree, that when a deed for this land was made to the plaintiff, there should be reserved a lien for the unpaid purchase-money.

The next question of controversy is, whether the vendors had a right in this deed to reserve "a right to remove on and through this tract of land sold the coals of coterminous tracts of land." This, it is claimed by the vendors of this land, is a proper provision to insert in their deed because of this provision in their contract of sale: "The coal and coal-privileges in the land west of Buck run, heretofore sold and deeded, are reserved. All the coal on that land has been sold and conveyed. The coal and all the coal in the land east of Buck run, and all the necessary and desired coal-privileges are hereby reserved." This is certainly very loose and careless language to insert in a contract, whereby the rights of parties are to be governed. Still, when the entire contract is read together, a sufficiently definite meaning can, I think, be attached to these vague words to prevent their vitiating the contract entirely because of their utter vagueness and uncertainty of meaning. To the first sentence it is difficult to attach a meaning. "The coal and coal privileges in the land west of Buck run, heretofore sold and deeded, are reserved. All the coal on that side has been sold and conveyed." This language construed literally is in irreconcilable conflict. One part of this most awkward sentence says: "The coal west of Buck run is reserved."

This means and can only mean, that. it is reserved to the vendors of this land, that is, to A. Armstrong, James O. Watson, &c. But these parties in the same sentence say: "This coal west of Buck run has been heretofore sold and deeded." To whom it has been sold and deeded is not stated, but as if to emphasize this, there is added this sentence: "All the coal on that side has been sold and conveyed." If this is to be regarded as literally true, how could the vendors, Armstrong and others, in this contract for the sale of the entire tract reserve to themselves this coal? It was, if this be literally true, not theirs to reserve but had already been sold.

In the long answer filed by the vendors in this cause and in their long depositions, though there is much irrelevant matter, there is nothing, which aids in the interpretation of this most awkward language. They do not produce or state in these answers or depositions the previous deeds of or contracts concerning this coal west of Buck run or give us any idea of their character, though it would seem obvious enough, that the production might throw some light on the loose language of the contract. But I observe in the deed of this land, tendered by the vendors to the plaintiff there are these provisions with reference to this coal: "There is also excepted and reserved from this deed and conveyance all the stone-coal and coal of every kind and description underlying or contained within said two hundred and thirty acres of land and the exclusive right forever to have, obtain and remove said coals from and through the land and the right forever to enter in and upon said land and there do and perform all such work and acts, as may be necessary to conveniently mine, obtain and remove all said coals from and through the land, but the coals on the west side of Buck run shall not be removed over the top or surface of the land." This deed seems to treat all the coal on this two hundred and thirty acres of land including that west of Buck run as the coal of the grantors in this deed, and as if it were not true, as stated apparently in the contract, that "all the coal on the west side of Buck run had before that been sold and conveyed by them."

As no objection was made by the vendee, the plaintiff, to

the above quoted provisions in the deed tendered to him by the vendors, I presume the fact to be, these vendors still have an interest in said coal on the west side of Buck run, and that it has not been absolutely and completely conveyed away to others, though doubtless others by some contracts unknown to us have some interest in it. But as both the vendors and the vendee have in their pleadings and evidence in this cause taken no notice of the interest of these third persons but have presented this cause, as if the vendors owned all the coal underlying the whole of this two hundred and thirty acres of land sold, I will interpret the contract, as if this were the fact, assuming, as all the parties to this contract do, that in the controverted questions this assumption will not alter the interpretation, which should be put on those portions of this contract, which are the subject of controversy.

The balance of the clause in the contract, on which we are commenting, is equally badly worded. It is: "The coal and all the coal in the land east of Buck run and all the necessary and desired coal-privileges are also hereby reserved." The vendors claim that these words "all *desired* coal-privileges are reserved" authorized them to insert in the deed when it was made any privilege connected with the coal, that they *desired*. And that the privilege, which they had a right to thus reserve, were privileges not only in reference to all the coal on this tract of two hundred and thirty acres sold, but the coal on any other of their lands or even on lands not owned then by them, but on such as they might at any time afterwards acquire title to by purchase. And accordingly in the deed they tendered the vendee they inserted this clause: "They reserve a right to remove on and through this land the coals of coterminous tracts of land." It seems to me utterly impossible to put this interpretation on these words of this contract of sale; for it is obvious, that, if they bore this interpretation, they would render utterly null and void the entire contract, as it would render it utterly vague and uncertain in its meaning. Under such an interpretation of it the vendee could have no possible conception of what use he could have of the surface of this two hundred and thirty acres of land, for which he had agreed to give twenty-five

dollars per acre. For whatever uses the vendors chose to put it to, not only in running the coal on it, but in the running of any other coal in the neighborhood or elsewhere, or in hauling any other coal, they could do so at their pleasure. If this had been expressed on the face of the contract, it would have destroyed it utterly as a contract; for one of the contracting parties under this so-called contract would have had just such rights and only such rights as the other contracting party might choose to permit him to enjoy.

What meaning then should be attached to these words? What is meant by "necessary and desired coal-privileges?" In the first place the contract on its face shows, that the vendee only purchased the surface of the land, and that he purchased no part of the coal underlying this tract of land. And though very awkwardly expressed, it does seem to me, that this reservation of the "necessary and desired coal-privileges" must have meant a reservation of all the coal of every description underlying this two hundred and thirty acres of land with a right on their part to have, obtain and remove the same from, on and through this two hundred and thirty acres of land, and the "right to enter at all times upon the said two hundred and thirty acres of land and there do and perform all such work and acts, as may be necessary to mine, obtain and remove from said two hundred and thirty acres of land all coals from and through said two hundred and thirty acres of land." And, inasmuch as the grantors inserted in the deed, which they tendered the vendee, the provision "but the coals on the west side of Buck run shall not be removed on the top or surface of the land," they thereby declared, that this was not necessary to the "conveniently mining of the same." And because of this declaration on their part this provision should be also inserted in the deed, which should be made by them. The only intelligible difference which I can make between the words "necessary coal-privileges" and "necessary and desired coal-privileges" is that by the adding of the word *desired* the parties indicated, that the necessary privilege for obtaining this coal should be interpreted liberally in favor of the vendors, instead of being interpreted strictly against them, as they might otherwise on general principles have been in-

terpreted. They 'have in the deed, which they have tendered placed on these words this liberal interpretation in their own favor; and this liberal interpretation I adopt as the proper interpretation, except that portion of it which reserves a right to remove on and through this two hundred and thirty acres of land the coal of coterminous tracts. This, we have seen, it is out of the question to suppose the parties intended to reserve by their contract. This is the more obvious from the fact, that in this contract there is not the least allusion to the vendors of this two hundred and thirty acres of land owning any other land or asking or reserving any privilege of any sort in reference to any other land.

From the final decree of July 27, 1882, it is obvious, that the circuit court of Taylor county construed this contract of sale substantially as I have construed it.

Much evidence was taken to show, that the vendors owned land coterminous to this two hundred and thirty acres sold, and that these lands were cut off from the railroad by this tract of two hundred and thirty acres, and that they were buying other lands there in the rear of it, and that unless they had this privilege of moving this coal on coterminous tract, through this tract of two hundred and thirty acres, they would sustain serious loss. But there is not one word of proof with reference to what passed at the time of making this contract. It is true that when the language of a written agreement is susceptible of more than one interpretation, that is to say, is on its face ambiguous, it has been held, that the courts will look at the surrounding circumstances existing, when the contract was made, at the situation of the parties and the subject-matter of the contract, and will sometimes even call in aid the acts done by the parties under it, as affording a clue to the intention of the parties; but the court never resorts in such a case to the verbal declarations of the parties, either before, at the time of or after the execution of the contarct, to aid in giving construction to its language. See *Crislip* v. *Cain*, 19 W. Va. 483 and numerous cases there cited.

But these principles have no application in this case. The language of this contract in this case is not so much ambiguous as unmeaning and contradictory. I do not doubt under

this rule, that the previous sales of coal or contracts in reference to coal on this tract of land west of Buck run, referred to in this contract, could have been and ought to have been introduced in evidence to aid in interpreting a portion of this contract. But the attempt to interpret the words "necessary and desired coal privileges" as meaning a right to transport through this tract of land coal on coterminous tracts owned by the vendors by proving, that the parties all knew that such a privilege was one which would be greatly desired by the vendors, would not be an effort to construe ambiguous words but an effort to insert in this contract a new and important clause in reference to matters, which, there is nothing whatever on the face of the contract to indicate, were at all in the contemplation of the parties, when the contract was entered into. The demurrers to the bill are based upon the ground, that Martin L. Shields had no interest in the subject of controversy and ought not to have been made a defendant. He occupied the position in effect of an assignor of this contract to the plaintiff, and the plaintiff in effect received this contract by assignment without recourse to Shields the assignor. It is true, that where an assignment purports to transfer the whole interest of the assignor, and there is nothing in the pleadings and proofs to induce the belief that it does not do so, the assignor has been held not to be a necessary party the suit. *Scott et al.* v. *Ludington et al.,* 14 W. Va. 393 and authorities there cited. But the grounds urged in these cases was, that the assignor should be a party, but while he may under these circumstances be dispensed with, yet the making of a party though not absolutely necessary is not in such case improper, as these cases show. The circuit court therefore did not err in overruling the demurrer to the bill.

But there were certain errors nevertheless in said decree, for which it must be reversed. In the first place it orders a conveyance to the plaintiff, Charles W. Findley, of a tract of land of two hundred and thirty-two acres one rood and twelve poles, which by an obvious mistake is a greater quantity of land than was purchased by him; this amount including by mistake certain lots expressly excepted in this written contract. This decree properly overruled the demurrers to the plaintiff's bill

and properly directed, that in the deed to be made to Charles W. Findley with covenants of general warranty of title a vendor's lien should be retained for the unpaid purchase-money. But before ordering said deed to be made the circuit court ought to have referred the cause to a commissioner of the court to ascertain exactly the amount of this unpaid purchase-money. The court properly directed that there should be left out of this deed the words "and to remove on and through the land the coals of coterminous tracts of land;" but it should have defined more definitely the provisions, which should be inserted in said deed, instead of providing generally that the deed should conform in all respects to the terms of said contract. The parties differ as to the meaning of the terms of this contract; and it would never do to insert in it the language used in said contract, as we have seen that it is exceedingly vague and unsatisfactory. The terms to be inserted in this deed to be executed should be the exact terms in reference to the coal on said two hundred and thirty acres of land and the privileges with reference to the receiving and removing the same, which were inserted in the deed tendered by the vendors to the vendee omitting of course the portion, which the circuit court directed to be omitted. There are other portions of this deed, which was tendered, that should be changed, as for instance, the following clause : "The said Charles W. Findley shall however have one acre of the coal in that part of the land on the east side of Buck run, but no more, and it shall be laid off in such shape and place as is or may be most convenient or beneficial to said Findley and the other parties to this deed." This instead of being left in this very indefinite manner should be definitely fixed either by the agreement of the parties or by the action of the the court.

In short, before this cause is finally disposed of, the deed to be delivered to Charles W. Findley should be inspected by the circuit court and by it approved and ordered to be executed and delivered. And in order that these things may be properly done, the decree of June 27, 1882, must be reversed, set aside and annulled and the appellee Charles W. Findley as the party substantially prevailing must recover of the appellants his costs in this Corrt expended. And this Court

proceeding to render such decree, as the court below ought to have rendered, doth overrule the demurrer of Martin L. Shields and also the demurrer of Armstrong, Watson and Kunst; and this Court is of opinion that the plaintiff is now entitled to specific execution of the contracts filed with his bill marked "Exhibit AA and BB" and that under said contract the vendors are entitled in the deed to be executed by them to retain a vendor's lien on the land agreed to be sold; but that they have no right to reserve in such deed the right to move on and through this land sold the coals of coterminous lands; and that with this exception under the provisions of the contract marked "AA," whereby "the coal and coal-privileges in the land west of Buck run are reserved" and "the coal and all the coal in the land east of Buckrun, and all the necessary and desired coal-privileges are hereby reserved," the vendors have a right to have inserted in their deed to be made for said land all the provisions in this deed filed with the answer in this cause, as the deed tendered by them to the plaintiff, which reserves all the coal underlying said land sold and the right to remove the same on and through the land sold and the right at any time to enter upon said land and there do and perform all such work and acts, as may be necessary to conveniently mine, obtain and removed all said coals from and through said land sold, but the coals on the west side of Buck run shall not be removed over the top or surface of said land. And this cause is remande to the circuit court of Taylor county with instructions to see carried out the provisions of this decree and further to proceed with this cause according to the principles laid down in the above written opinion and further according to the principles governing courts of equity.

AFFIRMED IN PART, REVERSED IN PART.    REMANDED.