# CHARLESTON.

## DESPARD v. DESPARD.

Submitted June 18, 1902.   Decided May 2, 1903.

1. APPEAL—*Limitation—Record.*
   Prior to chapter 78, Acts of 1901, the appellant was allowed five years from date of the decree appealed from, in which to deliver the record to the clerk of the appellante court, and to give the required appeal bond. (p. 446).

2. STATUTE.
   Said chapter 78 is not retroactive.   (p. 446).

3. JOINT PURCHASERS—*Decree—Trustee.*
   Where two or more persons purchase or acquire lands under a specific agreement between themselves, and pursuant to such agreement, the legal title to the lands, is taken in the name of one of them, the holder of said title is a trustee for the others to the extent of the interest of such others in said lands.   (pp. 462-3).

4. ACQUIESCENCE—*Bar—Estoppel.*
   Acquiescence in a transaction may bar a party of the relief in a very short period. Where one has knowledge of an act, or it is done with his full approbation, he cannot undo what has been done; and if he stands by and sees another dealing with property in a manner inconsistent with his rights, and makes no objection, he cannot afterwards have relief. Where his silence permitted or encouraged others to part with their money or property, he cannot complain that his interests are affected; his silence or acquiescence, and it estops him.   (p. 463).

Appeal from Circuit Court, Harrison County.

Bills by C. S. Despard and others against Diana Despard and others, and by J. M. Bennett against Allen Stalnaker. The suits were consolidated. Decree for defendants, and plaintiffs appeal.

*Affirmed.*

LINN & HAMILTON, for appellants.

LOUIS BENNETT and HENRY M. RUSSELL, for appellees.

MILLER, JUDGE:

We are met at the threshold by an objection to the hearing

or consideration by this Court of the appeal herein, because, as appellees allege, no appeal or *supersedeas* became effective within two years from the date of the decree appealed from. The said decree was made and entered by the circuit court of Harrison County, on the 25th day of January, 1889. The appeal with *supersedeas,* was allowed on the 25th day of August, 1900. A bond in the penalty of five hundred dollars was required, which was given on the 3rd day of August, 1901. A copy thereof was received by the clerk of this Court on the 7th day of August, 1901. More than two years had elapsed from the date of said decree until said bond had been given as aforesaid. Appellees contend that, because appellants did not give the required bond wthin two years from the date of the decree, the appeal did not take effect. They assert that the statutes in existence prior to the year 1899, when given the proper construction, made it necessary, in order to effectuate an appeal, that, not only the petition therefor should have been presented within two years after the decree was rendered, but also, that the bond should have been given within the same period.

Chapter 135 of the Code of 1868, made no limitation for the allowance of an appeal or writ of error. That was a matter of right, where the appeal or writ of error would lie, upon execution and delivery of the undertaking prescribed in section 2. The limit for giving and filing the undertaking was five years next after the date of the decree, judgment or order appealed from. Chapter 17 of Acts, 1872-73, was a new enactment, covering the whole subject of appeals, writs of eerror and *supersedeas.* It provided for a petition, assigning errors, thus giving the power to the court to refuse the writ. It limited the presentation of the petition to five years, from the date of the decree or judgment. In order to have a limit on the time of giving the appeal bond, section 17 was enacted. If five years had elapsed from the date of the decree or judgment before the record had been delivered to the clerk of the appellate court, no process could be issued by him. Therefore, no bond could be given. Taking the sections together, they required the appeal to be perfected within five years from the date of the decree. Said section 17 was re-enacted in the Act of 1882. Appellees contend that as the Act of 1882 covered the whole subject of appeals, writs of error and *supersedeas,* and repealed all acts and parts of acts with-

in its purview, or inconsistent therewith, it repealed section 17 of Acts, 1872-73. But it did not omit section 17. It retained both sections 3 and 17, as found in chapter 17, Acts, 1872-73. It is strange that the legislature retained that section, and at the same time repealed it; that a later act repealed a section of a former act, yet the later act retains that section; that when a former act contained two sections, which were literally re-enacted by a later act—one section is repealed and not the other. It might be asked which section is so repealed. We must allow both of said sections to stand and give to each a meaning and effect if that can be done.

Section 3 of chapter 157, Acts 1882, provides that no petition shall be presented for an appeal from, or writ of error or *supersedeas* to, any judgment, decree or order, which had been rendered or made more than five years before such petition was presented, if the judgment, decree or order mentioned in the petition had been rendered or made before said chapter, as amended, took effect; but if such judgment, decree or order was rendered after said chapter took effect, such petition should not be presented after two years from the date of such judgment, decree or order. It may be, as contended by appellees, that the legislature intended by the Act of 1882, to limit an appeal, in any court, to two years from decrees and judgments rendered after that act took effect; and that by inadvertence section 17 was not repealed, while section 3 was amended by limiting the presentation of the petition to two years.

Be this as it may, as section 3 then stood, it limited the application for an appeal to two years; but section 17 gave five years within which to perfect the appeal, by bond and delivery of the record to the clerk. If we were required to find a reason for the difference in time allowed by sections 3 and 17, we would say that there should be some time given after the granting of the appeal, in which to execute and deliver the bond. The appeal may be allowed on the last day of the two years. The bond must be given before the clerk of the circuit court, wherein the decree was rendered. Without sufficient time to do this, the appeal would be uselss. The legislature may have given too much time; but it was so enacted.

Section 3 of chapter 14, Acts of 1899, is now section 3 of chapter 135 of the Code. Although the legislature of 1899 saw

proper to amend and re-enact certain sections of said chapter 135 of the Code, it left section 17 as it had theretofore stood. Said chapter 14 was and is an act amending only sections 3, 18 and 19 of chapter 135 of the Code.

By chapter 78 of the Acts of 1901, said section 17 was amended and re-enacted, and changed the time for giving the bond and filing the record from five to two years. Said chapter 78 was passed February 22, 1901, and took effect ninety days thereafter. This chapter was the first express change made by the legislature in said section 17. There is no repugnancy in the said sections 3 and 17, in all of the legislation referred to. The two sections relate to two different matters—one limits the time for the application for the appeal—the other limits the time for the execution of the bond, and delivery of the record to the clerk. Both can stand, with distinct operation.

It is further contended that chapter 78, Acts 1901, amending section 17 of chapter 135 of the Code, by providing that the bond must be given, and the record delivered to the clerk within two years instead of five, retroacts and vitiates this appeal. This proposition is contrary to the rule that laws do not retroact from mere implication. *Stewart* v. *Vandervort,* 34 W. Va. 524.

When the bond in question was given, said section 17 of chapter 135 of the Code had not been amended. Appellant, under it, had five years from the date of the decree within which to execute the appeal bond, and file the record of the cause with the clerk. Said section 17 was not repealed or amended by the legislature by implication. We see no reason for saying that chapter 78 of the Acts of 1901 is retroactive. We must therefore hold that appellants have, within the time allowed to them by law, properly perfected their appeal.

The said decree appealed from was rendered in the cause of Charles S. Despard and others against Diana M. Despard, J. M. Bennett and others, and in the cause of J. M. Bennett against Allen Stalnaker and others, both commenced in the circuit court of Calhoun County but removed to the circuit court of Harrison County, and there consolidated and heard together.

The bill in said first mentioned cause was filed on the 22nd day of October, 1879, by Charles S. Despard, Burton M. Despard, Laura E. Goff and Nathan Goff, Jr., plaintiffs, against Diana M. Despard, Flora H. Despard and Duncan Lee Despard,

infant children and heirs at law of Burton Despard, deceased, and Jonathan M. Bennett (called in the proceedings, J. M. Bennett), defendants, in which it is alleged that on the 2nd day of October, 1874, said Burton Despard, then a resident of the county of Harrison, died testate, leaving surviving him the said Charles S., Burton M., Diana M., Flora H. and Duncan Lee Despard, and Laura E. Goff, wife of Nathan Goff, Jr., his children, and Gertrude Despard, his widow; that said Burton Despard by his last will and testament devised to his said children all of the real estate of which he died seized, and that said Gertrude Despard, widow, had released her right of dower in all of said land; that said release is filed as part of the bill; that, at the time of his death, said Burton Despard and J. M. Bennett owned jointly a tract of one hundred and ten acres of land in Calhoun County, granted to them by the commonwealth of Virginia, by patent dated on the 28th day of February, 1849; that by four several patents, each bearing date on the 31st day of December, 1844, there were granted to said Burton Despard, by the commonwealth of Virginia, four separate tracts of land, to-wit: One tract of four hundred and thirty-eight acres on Big Root waters; one of one thousand five hundred acres on the dividing ridge between the waters of the Little Kanawha river and the West Fork; one of five hundred acres on Ball's Camp fork of Pine creek; and the other of one thousand two hundred acres on Night Cut run, all situate in Calhoun County; and that the plaintiffs believe and charge that said Burton Despard died seized of the last four mentioned tracts of land, except such parts as had been theretofore sold by him and his agents to other persons; but that they were informed that said J. M. Bennett claimed to be the owner of an undivided one-half interest in the same; and they call upon him to produce the evidence of his title thereto, if any he has.

The bill further alleges that out of said one thousand five hundred acre tract, there were sold to Martha Luzzadder, on the 18th day of May, 1874, eighty-six and one-fourth acres for the sum of $258.75; to Henry M. Knight on the 25th day of July, 1874, a parcel supposed to contain seventy-five acres at three dollars per acre; and to Emery Ball, on the 16th day of April, 1870, one hundred and twelve and three-fourths acres for $338.00; that out of said one thousand two hundred acre tract.

there were sold to William M. Taylor, on the 18th day of August, 1874, seventy-five acres at $3.00 per acre; to Perry Bell and James T. Law, on the 23rd day of June, 1872, one hundred and eighty-three acres at $3.00 per acre; to William P. Haverty, on the 25th day of February, 1851, two hundred and eighty-five acres, at one dollar per acre; to Susan Bell, on the same day, one hundred acres, at $1.25 per acre; that on the 21st day of September, 1867, there was also sold to James A. Ferrell, out of said one thousand two hundred acres, and out of a two hundred and ten acre tract, belonging to said Burton Despard, J. M. Bennett and one G. D. Camden, one hundred and fifty acres, for $375.00; that on the 4th day of March, 1855, there was sold out of said one thousand two hundred acre tract, to Henry Stallman, two hundred and eighty-one and one-half acres for $530.62½; to Alpheus Matthews, on the 26th day of December, 1856, ninety-one and one-half acres for $203.13; and to Silas and Aaron Petit, on the 16th day of April, 1870, one hundred and thirty-six acres for $408.00; that out of said five hundred acre tract, there were sold, on the 22nd day of April, 1869, to Allen Stalnaker, one hundred and nineteen acres for $625.00; on the same day to Ahab and Allen Stalnaker, eighty-eight and one-half acres for $375.00; and on the 17th day of December, 1872, to Waitman T. and Eppa T. Hathaway, two hundred and sixty-three and one-fourth acres for $1,316.25; that out of said four hundred and thirty-eight acre tract, there were sold, on the 10th day of June, 1857, to Robert Wilson, one hundred and sixty-two acres for $243.00; and on the 21st day of August, 1874, to W. G. Bennett, administrator of Morros S. Shanks one hundred and forty-eight and one-half acres for $445.50.

The plaintiffs say that they know of no other real estate in Calhoun County owned jointly by said Bennett and said Burton Despard at the time of his death, and call upon said Bennett to discover and state in his answer to the bill, whether any other tracts were so owned by them in said county, and to produce and file the evidence of his title thereto, so far as the same may be in his possession. Plaintiffs further charge upon information and belief that said Bennett had collected large sums of money on account of the sales of the lands made as aforesaid, and they also call upon him to state fully what collections had

been so made by him. They pray that all of the lands owned jointly by said Bennett and said Burton Despard, in Calhoun County, be ascertained and partitioned according to the respective rights of the parties interested therein; that an account be taken of the said sales; that said Bennett be charged with all of the moneys received by him, on account thereof; and for general relief.

On the 28th day of May, 1880, on motion of the plaintiffs, a rule was awarded by the court in said cause against said J. M. Bennett, requiring him to appear on the first day of the next term and show cause, why he should not be fined and attached for his contempt in failing to file his evidence of title to the said land, if in his possession.

On the 21st day of February, 1881, said J. M. Bennett filed his demurrer and answer to the bill.

On the 25th day of October, 1883, an amended bill was filed in said cause, making Edwin Maxwell, as executor of said Burton Despard, a party defendant thereto.

Thereupon said Maxwell as executor as aforesaid, filed his answer, and the plaintiffs replied generally to the said answer of J. M. Bennett, which had been theretofore filed. At the same time, on motion of plaintiffs, it was ordered by the court that said J. M. Bennett appear on the first day of the then next term, and produce and file with the papers in the cause any contract in his possession made between him and said Burton Despard, respecting the interest claimed by Bennett in the said four hundred and thirty-eight, one thousand five hundred, one thousand two hundred and five hundred acre tracts of land; also any written contract in his possession, entitling him to one-half of all lands, entered and patented by said Burton Despard in Calhoun and Gilmer Counties. At the February term, 1884, of said court, an attachment was directed to issue against said Bennett, for his failure to appear in obedience to the rule issued against him at October term, 1883, as aforesaid.

Defendant, J. M. Bennett, in his answer, admitted the joint ownership of himself and Burton Despard in the land as stated in the bill, and also averred and charged that the said four tracts of land, containing four hundred and thirty-eight, one thousand five hundred, one thousand two hundred and five hundred acres, respectively, were always owned by Despard and himself jointly;

that the said Despard, and his heirs, and respondent held said lands jointly under contract for entering and patenting lands; that the said tracts of land were patented to said Despard, but that defendant, Bennett, owned one-half thereof; that the legal title to said four last mentioned tracts was in said Burton Despard until the 14th day of December, 1870, when all of said tracts were conveyed to Despard and Bennett jointly, in pursuance of a previous sale for taxes, to them in their joint names; and that the deeds for said lands were recorded in Calhoun County.

The answer further substantially avers that, in addition to said tracts, by a patent of the commonwealth of Virginia, bearing date on the 30th day of November, 1848, there was granted to said Burton Despard and J. M. Bennett, jointly and equally, another tract of land, lying on the south side of the Little Kanawha river, opposite Big Bend, containing one thousand acres, which tract covered a smaller one of eight hundred and twenty-four acres, previously purchased by Despard and Bennett of George Holbert; that prior to the 18th day of June, 1865, said Burton Despard had negotiated a sale of said last mentioned one thousand acre tract for $2,000.00; that Despard, by letter, requested Bennett to convey said land to him (Despard) to the end that the sale might be consummated; that accordingly Bennett did execute a deed for said one thousand acre tract to Despard; but the sale thereof was never consummated; that said Despard often told Bennett that said deed should be returned to him, which was never done; that after the death of Despard, the deed was found among his papers, and by his personal representatives or heirs placed on record.

On the 28th day of October, 1887, said J. M. Bennett departed this life, testate, and in and by his last will and testament, devised all his real estate to his only children, to-wit: W. G. Bennett, Louis Bennett, Gertrude Bennett, who afterwards intermarried with Fleming Howell, and Mary L. Bennett, who intermarried with Wm. B. Bowie. Said W. G. Bennett and Louis Bennett were named as executors in said will, and qualified as such.

The said suit was revived against said Bennett's devisees and executors, and thereupon said executors filed their answer to the bill and amended bill in said cause, in which they, among

other things, say that they are informed and believe that before said tracts of land were surveyed, and patents issued for them to said Burton Despard, said J. M. Bennett and said Burton Despard and one Michael H. Haverty entered into a contract in writing, dated the 10th day of August, 1843, whereby it was mutually agreed between them that said Despard and Bennett or either of them should have and procure land warrants for the entry of lands on the Little Kanawha river, and its waters; that said Haverty should locate said warrants and do or have done such surveying and local work as would be necessary to carry them into grant; and in such grants each was to have a one-third interest though the patents should be issued in the name of one or more of them as might be; that under said agreement, said one hundred and ten, four hundred and thirty-eight, one thousand five hundred, one thousand two hundred and five hundred, and some other tracts were respectively carried into grant, the first tract in the names of Bennett and Despard, and the others in the name of Despard; that afterwards, said J. M. Bennett, by oral contract, acquired the interest of said Michael Haverty in said lands, intending the same to be for the joint ownership of himself and Despard; that afterwards, said Despard and Bennett purchased said lands at a tax sale; that on the 14th day of December, 1870, the clerk of the county court of Calhoun County, by deeds of that date, conveyed said tracts of four hundred and thirty-eight, one thousand five hundred, one thousand two hundred, five hundred and two hundred and fifty acre tract, respectively, to said Despard and Bennett jointly; that said deeds were duly admitted to record in said clerk's office on the 31st day of December, 1870, and that afterwards, said J. M. Bennett obtained a deed from the heirs of said Haverty for his one-third interest in said lands, but intending said lands to be for the joint interest of said Despard and Bennett. The plaintiffs filed a replication to this answer, in the main, amounting to a denial of all the allegations thereof, and also alleging that by a writing under seal bearing date on the 10th day of January, 1848, the said Burton Despard appointed and constituted said J. M. Bennett, his agent and attorney in fact, with power to make sale of any and all the lands which the said Despard then owned, or had right or title to, or interest in, lying in the counties of Gilmer and Braxton, (said lands being then

in Gilmer county) ; to make any compromise in relation thereto, which said Bennett might deem proper; and to appoint sub-agents to act under him, giving to them such powers as he might see fit; that said agency extended to and embraced all the lands in the said answer mentioned; that said Bennett accepted said agency; took charge of said lands, and appointed Milton Norris, a sub-agent with power to sell the same; that the said Bennett continued to act as such agent and attorney in fact until the death of said Despard, on the 2nd day of October, 1874; that said Despard lived at Clarksburg in the county of Harrison, seventy or seventy-five miles from said lands; that said J. M. Bennett, who resided at Weston in the county of Lewis, was a practicing attorney-at-law, in the counties of Lewis, Braxton, Gilmer and Calhoun, and regularly practicing in the circuit court of the last mentioned county.

The bill in the cause against Allen Stalnaker was filed in the name of said J. M. Bennett, Edwin Maxwell, as executor, and the said children and devisees of said Burton Despard, deceased. Said executor and devisees were afterwards transposed as parties and made defendants in said cause with Stalnaker. It is alleged in the bill that on the 22nd day of April, 1869, plaintiff, J. M. Bennett, together with Burton Despard, by their agent, Milton Norris, sold to defendant, Allen Stalnaker, one hundred and nineteen acres of land, which is the same one hundred and ninety-nine acres hereinbefore referred to in said first mentioned cause, at the gross price of $625.00; that said Stalnaker paid to said Norris on the day of sale $325.00 on said land, and gave his single bill for $300.00, payable on the 15th day of October, 1869, to said Burton Despard, specifying that it was given for one hundred and nineteen acres of land on Pine Creek; that in fact, said single bill was for the joint benefit of Despard and Bennett; that said Stalnaker had made various payments, stating them, to said Norris on said single bill; that, at the time said Norris sold said land, he executed a title bond to Stalnaker, whereby he bound said Despard and Bennett to convey said land to Stalnaker by deed with covenants of general warranty, when the purchase money therefor, and taxes thereon were fully paid. After certain other allegations, the bill prays for specific enforcement of said contract; that said Stalnaker be compelled to pay the balance of the purchase money due on said land, and

also the taxes thereon, which had been paid by Bennett and Despard, and his personal representative. The said executor and devisees answered said bill, denying that said Bennett had any authority to institute said suit in their names; disavowing any statements made in the bill, claiming for Bennett an interest in said land or in said purchase money, and praying that the whole of said purchase money and taxes be decreed to them. Afterwards, an amended bill, by W. G. and Louis Bennett, as executors of J. M. Bennett, was filed in the cause, which, substantially, reiterated the allegations of the original bill. It then sets out the alleged contract between Despard, Bennett and Haverty; the purchase of Haverty's interest in the said lands by Bennett for the joint benefit of Despard and himself; the purchase of the lands by Bennett and Despard at the tax sale, and the execution of the tax deeds to Bennett and Despard jointly by the clerk of the county court of Calhoun County, and many other matters and things tending to show Bennett's joint equal ownership with Despard in all of said lands.

Said Edwin Maxwell, Ex'r., and the Despard devisees in turn answered this amended bill, denying all the material allegations thereof, denying that said Haverty ever had any interest in said lands; and assailing the said tax sales and deeds thereunder. Numerous and voluminous depositions were taken and filed by the parties on both sides of the controversy; and the causes being matured, consolidated and heard by the court, it was adjudged and decreed that, as to said one hundred and ten acres on Yellow creek granted to said J. M. Bennett and Burton Despard on the 28th day of February, 1849, and as to said four hundred and thirty-eight acres, situate on Big Root, and the one thousand five hundred acres, situate on the ridge between the waters of Little Kanawha and the West Fork, and the five hundred acres situate on Ball's Camp Fork of Pine creek, and the one thousand two hundred acres situate on Nigh Cut run, all granted to said Burton Despard on December 31, 1844, and particularly described in exhibits filed with the original bill, the said J. M. Bennett and Burton Despard were the joint equal owners thereof although the grants therefor may have been issued to said Burton Despard alone; that the said devisees of said J. M. Bennett, deceased, are the joint equal owners as heirs at law and devisees of said J. M. Bennett, of one undivided

half of the residue of said tracts of land, after deducting said
sales from the original tracts; and the said Despard's heirs and
devisees are the owners of the other undivided half of the residue
of said tracts, after deducting said sales from said original tracts,
and in proportion, as between themselves, to their respective in-
terests in the estate of said Burton Despard, deceased, and of
Flora Despard, deceased; and that as to the land conveyed by
said J. M. Bennett to said Burton Despard by said deed dated
the 10th day of November, 1864, to-wit:  The one undivided
half of the one thousand acre tract, and of said eight hundred
and twenty-six acre tract originally so owned and held by J. M.
Bennett and Burton Despard, after deducting therefrom one
hundred and fifty-six acres thereof sold to Samuel Haverty and
Daniel S. Haverty, the said Bennett heirs and devisees are the
joint equal owners of the one undivided half of the residue
thereof, and the said Despard heirs and devisees are the owners
of the other undivided half of the residue thereof, in proportion,
as between themselves, to their respective interests in the estates
of said Burton Despard and of Flora Despard, deceased.  The
decree also appoints commissioners and provides for partition of
said lands between the parties according to their respective in-
terests therein.

In the said cause of Bennett against Stalnaker and others the
court decreed that said Allen Stalnaker should pay to W. G.
Bennett and Louis Bennett, as executors of J. M. Bennett, de-
ceased, the sum of $235.17, being one-half of the amount of the
balance of purchase money, due from him for said one hundred
and nineteen acres of land so purchased by him, and that he
should pay to said Edwin Maxwell, executor of Burton Despard,
deceased, the like sum of $235.17, being the other half of said
purchase money, due from him, with interest on each of said
sums from the 25th day of January, 1899.  The decree makes
other provisions as to costs, and the sale of said land, in case
of default of payment by Stalnaker; and then refers the first
named cause to M. M. Thompson, one of the commissioners of
the court to raise and state an account between J. M. Bennett
and Burton Despard, and between the executors of said Ben-
nett and the executor of said Despard, respecting the sales of
the parcels of land hereinbefore referred to, and to the collec-
tion of purchase money, the payment of taxes, and any other

pertinent matter; and to report any balance which he might find to be due from the one to the other.

Appellants assign as error: That the circuit court erred in holding that the four tracts of four hundred and thirty-eight, five hundred, one thousand two hundred and one thousand five hundred acres of land patented to Burton Despard, or any part of either of said tracts, were originally owned jointly, by J. M. Bennett and Burton Despard, and in directing a partition thereof; and in decreeing any part of the purchase money due from Allen Stalnaker, to the executors of J. M. Bennett, and more especially so, without taking into account the collections made from Stalnaker; and ascertaining how the account stood between Bennett and Despard on account of the sale to Stalnaker, when by the same decree, the cause was referred to a commissioner for settlement of the accounts between the parties relating to the collections of purchase money.

There seems to be no contention about the one hundred and ten acre tract. It appears that the said eight hundred and twenty-six acres are almost, if not altogether, covered and included in the one thousand acre tract. The last mentioned tract was originally located and entered by Michael H. Haverty in the name of Burton Despard, by a survey dated March 1, 1844. One George Holbert claimed that he had already acquired title to this land. A *caveat* was issued against Burton Despard. A compromise was then made, and Bennett and Despard purchased Holbert's claim, on the 27th day of September, 1848 A patent for said one thousand acres was then issued jointly to J. M. Bennett and Burton Despard, which bears date on the 30th day of November, 1848. No change appears in the title thereto until the year, 1865. On the 15th day of June, 1865, Despard wrote and sent to Bennett the following letter:

"I regret that I did not see you in Clarksburg, I did not know you were there till I was leaving for this place. I desire much to see you and arrange our land matters. I have conditionally sold the Hobert land & the one thousand acre survey adjoining and suggest that you prepare and send me a deed for your interest in it, together with all the title papers you have in reference to that land—let the deed be made to me as I have furnished my agent with a deed of general warranty from me to be delivered when & if the contract is closed. If the sale is closed

it will net us I think over $15000. I am glad you have returned & hope your old friends will treat you kindly." Attached to the above letter is the following: "The price conditionally fixed on one thousand and sixty-nine acres is $20000, but refused to pay Norris his com'n. and I never promised Mr. Fleming who is acting for me a very liberal com'n. he has been several times in Pittsburg and Gilmer seeing after our lands and demands a large compensation especially as he put in this land instead of his own, we can make him useful in other matters. It is very important and you put me in your deed to me and all the title papers as to the Hobert piece so if necessary I can show a clear title. Mr. Baily claims an interest in this land & if I recollect what we agreed to he should have a part. What do you remember, but for the present do not say to him I am about to sell. I have been writing all day & am scarce of paper we have a large amt., of taxes to pay which must be done soon."

The foregoing letter, postscript and signature thereto, were proved before the clerk of the county court of Calhoun County, on the 21st day of October, 1882, by the oaths of Robert F. Fleming, Robert G. Linn and William E. Lively, and thereupon the paper was admitted to record in said clerk's office. Judge Maxwell, as a witness in this cause, also proved the said letter and signature thereto, to be in the handwriting of Burton Despard. J. M. Bennett, by his deed, acknowledged by him on the 3rd day of August, 1865, in consideration of the sum of one dollar, conveyed to said Burton Despard, one equal undivided half of the tracts of land described therein, situate in Calhoun County, "Containing one thousand acres, being a tract of land granted by the commonwealth of Virginia to said Despard and Bennett; also an equal undivided half part of another tract purchased jointly by said Despard and Bennett of George Holbert, and known as the Holbert farm, and is principally covered or lapped upon by the said survey first herein named. "This tract was granted to Alexander Harrison as a tract of five hundred acres, but is estimated to contain eight hundred and twenty-six acres by recent survey." The grantors, by said deed, warranted generally the property thereby conveyed. It appears that said contemplated land sale was never consummated; that said deed was found, after Despard's death, among his papers, and, on the 7th day of November, 1877, was admitted to record in the

clerk's office of the county court of Calhoun County, something
over twelve years after its date, and more than three years after
Despard's death.

Judge Maxwell also testified concerning the transaction re-
ferred to in Despard's letter of June 18, 1865, as follows: "I
don't know anything about it personally, and I don't think I
know anything about it at all, except what Col. Despard said
to me." Again: "He said he was trying to sell a tract of land
belonging to himself and Jonathan M. Bennett, situated in
Calhoun County; that he had taken a deed from Bennett for the
land or for his interest in the land, so that he would be able to
make title to it, if he happened to make a sale, without taking
time to get a deed from Mr. Bennett. He also said he had failed
to make sale." It will also be observed that the deed, upon its
face, is for the nominal consideration of one dollar. It was
executed by Bennett and sent to Despard, at his request, to sup-
ply and perfect the title to the land, in case the sale thereof
should be made by Despard as contemplated. The sale was not
consummated. The deed failed in its purpose, and was never
returned to Bennett.

The record shows that said Louis Bennett filed his bill in
equity in the county court of Lewis County against Lemuel Hav-
erty and Daniel S. Haverty, Jonathan M. Bennett, Edwin Max-
well, as executor of Burton Despard, deceased, and all of said
heirs and devisees of said Despard, who were all duly served
with summons in said suit which was afterwards transferred
to, and tried and determined in, the circuit court of said county.

The bill in said cause alleges the joint equal ownership of
said J. M. Bennett and Burton Despard in the said one thousand
and five hundred acre tracts of land, respectively; the sale of a
portion out of both of said tracts, supposed to contain one hun-
dred and fifty acres, by a contract in writing, made by Milton
Norris, as their agent, to said Haverty, at the price of four dol-
lars per acre to be paid by the vendees; the assignment by J. M.
Bennett of his interest in said contract with the right to re-
ceive the benefit thereof, to said Louis Bennett; that said Hav-
ertys were put in possession of said land under their said con-
tract of purchase; that said vendees had failed to pay said pur-
chase money; and it then prays for a decree and sale of said
land. On the 12th day of March, 1889, a decree was made and

entered in said cause by which it was adjudged that said Daniel S. Hoverty, and I. P. Knight, administrator of Lemuel Haverty, deceased, should pay to said Louis Bennett, plaintiff as aforesaid, the sum of $665.05, with interest thereon from the 4th day of March, 1889, and the costs of said suit; and to Edwin Maxwell, as executor of Burton Despard, deceased, the sum of $665.05, with interest as aforesaid; and that, in default of such payment within thirty days thereafter, W. E. Lively, who was appointed a special commissioner for the purpose, should sell said land.

The said special commissioner, under and by virtue of said decree of sale, did sell said land to said Louis Bennett, and others, the devisees of said J. M. Bennett, one-half thereof, and to said Edwin Maxwell, as executor aforesaid, one-half thereof for $600.00; which sum, the record shows, was paid by said purchasers in hand to said commissioner; and thereupon said sale was confirmed by the court, and the commissioner was further authorized and directed to convey the land to the purchasers thereof according to their respective interests therein.

Milton Norris says that Bennett claimed an interest in the said lands since 1844. Other evidence shows that he made claim to ownership therein. Tax tickets for taxes assessed on said lands, duly receipted by the sheriffs for different years, were found with Bennett's papers, and are filed in the record. It is further shown that he exercised acts of ownership and control over, and expended money upon said lands. It is contended, however, by appellants that all those acts were done under, and by authority of, his power of attorney from Despard, bearing date on the 10th day of January, 1848. An inspection of this document shows that it does not specify what particular lands or interest therein Despard owned or claimed at that time. It may be inferred from the record that he had no definite information about the matter. It is claimed by appellees that Despard had not been in that section of country where the lands lay. There is nothing irreconcilably inconsistent in this power of attorney, and the claim of Bennett. The latter was a practicing attorney and a regular attendant on the courts in the county where the lands are situated. It was convenient, no doubt, for Bennett to have authority to make sales of, and convey full title to the lands, without the joinder of Despard, just as it was proposed in

the contemplated sale by Despard of the one thousand and eight hundred and twenty-six acres. It is further shown that Bennett paid charges and taxes on the lands before the execution of the power of attorney. James Barr, who was sheriff of Calhoun County, says that said C. S. Despard paid one-half of the taxes on the one thousand, five hundred, one thousand two hundred and four hundred and thirty-eight acre tracts of land for the year 1875, and that witness was of the impression that he said, Bennett was to pay the other half. On the 15th day of November, 1886, C. S. Despard wrote the following letter:

Parkersburg, W. Va., Nov. 15, 1886.

J. M. Bennett,

Weston, W. Va.

Dear Sir:—

"I have just received a statement from Calhoun County of the Lands that B. Despard Heirs are interested in and were sold as delinquent Lands and I find that they were sold for the years 1883 & 1884 and the following lands were sold in the name of Bennett & Despard.

| 1500 acres on Rowels Run | $108.11 |
| 1200 acres on Neigh Cut Run | 44.77 |
| 123½ acres on Big Root | 7.68 |
| 500 acres on Pine Creek | 62.19 |
| | 222.75 |

as you have been paying ½ of these taxes and did not pay then according to the sale paid your 1-3 in all the rest of these lands that were sold for Delinquent taxes in which the Despard Heirs are interested in Calhoun, Braxton & Gilmer Countys I write you as I am going to redeem the Despard Heirs portion. Whether you knew that they were sold in your name I understood you to say you had paid your share. Whatever we do we will have to do pretty quick these lands were sold to the State and the time runs out to redeem them on the first of December. I have written my att'y.. at Charleston to go to the Auditor's Office and get a full statement of the Delinquent lands which we were interested in and I expect to hear from him in a few days and we can settle them all together if you so desire it. Yours truly, C. S. Despard."

The deeds made by John C. Campbell, recorder of Calhoun

County, to said Burton Despard and J. M. Bennett for said tracts of four hundred and thirty-eight, one thousand two hundred, one thousand five hundred and five hundred acre tracts, respectively, each bearing date on the 14th day of December, 1870, were duly admitted to record in the then recorder's office of said county, on the 31st day of December, 1870. They, each, recite the assessment of the taxes to Burton Despard; the sale of said lands to Despard and Bennett; the report made by the county surveyor, specifying the metes and bounds thereof, and the grant to the purchasers. No person in interest seems to have questioned them until they were assailed in this suit, in 1897. There does not appear to have been any concealment by Bennett in this transaction. The deeds were placed on the public record a few days after they were executed, more than three years before the death of Despard. In a letter written by Despard to Bennett, dated June 21, 1874, in speaking of taxes, he said: "Let us sell our lands and be done with the trouble." There is also a statement in the record of sales of land, made by Milton Norris, as agent for Despard and Bennett, which statement had been sent by Norris to Despard, and by Despard to Bennett, and bears date October 8, 1860. It shows the sale of said two hundred and eighty-one and one-half acres out of the one thousand two hundred acre tract, for Bennett & Despard, to Henry Stallman; the sale to Alpheus Matthews, of said ninety-one and one-half acres, part of the one thousand two hundred acre tract; the sale to Robert Wilson, out of said four hundred and thirty-eight acre tract; and the receipt of $50.00 on the sale of the one hundred acres to Susan Bell out of said one thousand two hundred acre tract. There are many other expressions of said Burton Despard, showing that he had knowledge of Bennett's claim to ownership in said land, and it nowhere appears that he ever repudiated such claim.

Milton Norris further testifies that he commenced selling said lands as agent of Bennett and Despard in 1854, and sold parcels to Henry Stallman, Mrs. Matthews, James A. Ferrell, Silas Petit, Aaron Petit, Wm. M. Taylor, Mrs. Shanks and Samuel Bell. On the 25th day of July, 1874, said Norris, as agent of J. M. Bennett and B. Despard, sold a parcel of said land, supposed to contain seventy-five acres, to Henry W. Knight; on the 18th day of May, 1874, Norris, as such agent,

sold to Martha Lussader eighty-six and one-fourth acres of the one thousand, five hundred acre tract; and on the 23rd day of June, 1873, as such agent, Norris sold a parcel of said one thousand, two hundred acres to Perry Bell and Thomas Law. So far as we can ascertain, all of the sales hereinbefore specified, were made by persons, claiming to act as agents for both Despard and Bennett, and the purchasers went into possession of the lands thus purchased, under their contracts so made.

The material parts of the various records of chancery causes, are filed. One is a suit by J. M. Bennett and Burton Despard in the circuit court of Calhoun County, instituted against Wm. P. Haverty, to enforce their alleged lien for purchase money. A decree of sale was made therein, the land was sold by a special commissioner, bought in by Bennett and Despard jointly, and the sale confirmed. As assignee of said J. M. Bennett, said Louis Bennett instituted suits against said Henry Stallman; Perry Ball and T. J. Law; Martha Lussader; Henry Knight; Emery Ball; and W. T. and E. T. Hathaway, respectively, for the collection of the purchase money due from the said purchasers upon said parcels of land bought by them as hereinbefore set out. In at least nine of said suits, the claim of said J. M. Bennett to a joint equal ownership in said lands with Burton Despard, was distinctively and positively averred. The decrees therein were based upon that assumption, and to all of said causes exhibited, except the first mentioned, the said executor and devisees of said Burton Despard were parties and served with process therein; decrees were rendered therin in their favor for one-half of the purchase money due and in favor of said plaintiff for the other half. Under some of said decrees, the lands were sold and bought in equally and jointly by the Bennett devisees, and by Maxwell, executor as aforesaid. None of said decrees, so far as this record discloses, was ever reversed, or set aside.

There is a mass of testimony about the alleged agreement made on the 10th day of August, 1843, by Bennett, Despard and Michael H. Haverty. What purports to be a copy theerof appears in the record. The original is shown to have been in the possession of said Haverty, and to have been found among his papers, but almost destroyed by rats. The fragments of it were not preserved. Lemuel Haverty, a son of said Michael

H. Haverty, and other witnesses, say that they saw the original, and that the paper produced is substantially a copy. The loss or destruction of the paper, perhaps, accounts for the failure of said J. M. Bennett to file it, in obedience to said rule and attachment issued against him. Much testimony was taken tending to impeach and, also to support, Lemuel Haverty's evidence. It is difficult to say on which side the testimony preponderates. All of the evidence and circumstances bearing on the question seem to prove the contract, as claimed by appellees. The circuit court has weighed the testimony and, no doubt, reached the same conclusion. To say the least of it, such finding was not, and is not, plainly contrary to the weight of the evidence, and will not now be disturbed. *Naughton* v. *Taylor,* 50 W. Va. 233, and authorities there cited.

It also appears that Burton Despard was a lawyer, and we may infer that he understood his legal rights in the premises. A witness says that shortly before the civil war, Despard and Bennett were engaged together several days at the law office of Bennett in the town of Weston in making a list of the lands in which they were jointly interested. Witness's recolection was that the four hundred and thirty-eight, twelve hundred, fifteen hundred, one thousand, and five hundred acre tracts were put on the list. Despard also joined with Bennett in certain deeds conveying portions of the land to purchasers.

J. M. Bennett was a man prominent in affairs; he is shown to have been auditor of the State of Virginia, before the war of the rebellion; he was a lawyer, and visited and practiced in the courts of his section; he made claim publicly to the ownership of an undivided half interest in the lands in controversy; he had control thereof, and expended money thereon in payment of taxes and otherwise; he appointed agents for Despard and himself, who sold parcels of same, some of which sales are shown to have come to the actual knowledge of Despard; and the purchasers took possession of, and acquired title to the lands bought by them, under the contracts so made. It seems incredible that Despard was not fully cognizant of these transactions so vitally affecting his interests. He made no objection thereto. Herman on Estoppel and *Res Judicata,* Vol. 2, section 1061, says: "Acquiescence in a transaction may bar a party of his relief in a very short period. Thus, if one

has knowledge of an act, or it is done with his full approbation, he cannot afterwards have relief. He is estopped by his acquiescence, and cannot undo that which has been done. So, if a party stands by, and sees another dealing with property in a manner inconsistent with his rights, and makes no objection, he cannot afterwards have relief. His silence permits or encourages others to part with their money or property, and he cannot complain that his interests are affected. His silence is acquiescence and it estops him." Again, at section 1063, he says: "When a man with full knowledge, or at least with sufficient notice or means of knowledge of his rights, and of all the material circumstances of the case, freely and advisedly does anything which amounts to the recognition of a transaction, or acts in a manner inconsistent with its reputation, or lies by for a considerable time, and knowingly and deliberately permits another to deal with property, or incur expense, under the belief that the transaction has been recognized, or freely and advisedly abstains for a considerable lapse of time from impeaching it, there is acquiescence, and the transaction, although originally impeachable, becomes unimpeachable in equity."

Despard's devisees, at this late day, should not be permitted to enforce their claim of entire ownership of the land.

The pleadings in the suits above mentioned were prosecuted to collect the purchase money for integral parts of said tracts of land, sold to various purchasers. The right of the plaintiff therein to recover was dependent, in each suit, upon the ownership in, and title of J. M. Bennett to, the lands. This was alleged positively and distinctly in each cause, and the decrees were predicated therein upon that fact, and upon proper proof of the indebtedness. It is nowhere denied that Despard's executor and devisees were parties to said suits. No steps, so far as we know, were ever taken by them to reverse or set aside decrees or any of them. "Igornantia juris meminem excusat. And so, all men are presumed to take notice of proceedings in the courts of justice." Bennett on Lis Pendens, section 19. Other law writers say, "that the proceedings in the courts of justice are notice to the world." 2 Rand. 104.

At section 19 of Bennett on Lis Pendens, the following is noted: "After the bill is filed, and thus becomes a public record, and ample means are afforded for the public to become ad-

vised as to what property is involved in the litigation, there is much propriety in referring to the pending litigation as 'notice *lis pendens,*' or 'notice of *lis pendens.*' It does not matter that few persons ordinarily, acquire actual knowledge of the record of the suit, and, thus of what property is involved in it. The opportunity is afforded, by use of dilligence, of acquiring that knowledge, and a sound public policy will not thereafter excuse the purchaser of the property for not ascertaining the facts spread upon the records."

Appellants cite a list of authorities to prove that the aforesaid decrees, if binding upon them for any purpose, are not adjudications of the title to the unsold portions of said land as between J. M. Bennett and Burton Despard, or as between the heirs and devisees of Bennett, and the heirs and devisees of Despard. A discussion of this matter seems unnecessary here. All of the facts and circumstances in this cause together with the conduct of the parties thereto established the agreement between Despard and Bennett, and that Bennett was to have a joint equal ownership with Despard in the lands. The subsequent grants thereof by the Commonwealth of Virginia to Despard alone did not divest Bennett of his interest therein. Despard, as to such interest, held the title as trustee for Bennett, and in equity, a trust resulted in his favor for his proper proportion of the land. *Murry* v. *Sell,* 23 W. Va. 480; *Potts* v. *Fitch,* 47 W. Va. 63.

The decree of the circuit court adjudicating the ownership of said lands is right.

We cannot see how appellants are prejudiced by the matter complained of by them in their second assignment of error. In the said suit against Stalnaker, the balance of purchase money for the lands sold to him, due to Despard and Bennett, was ascertained and decreed to the plaintiffs' as their rights thereto were made to appear. This adjudication extended to no other purchase money. It is *not* shown that Despard or his personal representative or devisees has any specific lien upon this fund. Bennett's estate is not alleged to be financially unable to pay any balance which might be found due from it to appellants. There is no apparent reason why the Stalnaker purchase money should be brought into the matters referred to said commissioner for settlement.

We find no error in this part of said decree. For the foregoing reasons, the decree of the circuit court aforesaid must be affirmed.

*Affirmed.*