# CHARLESTON.

### JAMES FISHER v. J. W. POLING *et al.*

### Submitted April 18, 1916.   Decided May 2, 1916.

1. FRAUDULENT CONVEYANCES—*Presumptions—Transactions Between Husband and Wife.*

   The statutory enlargements of the property, contractual and remedial rights and liabilities of married women, have not abrogated the presumptions of fraud in transactions between a wife and her insolvent husband, working prejudice to the rights of creditors.   (p. 293).

2. SAME.

   Such presumptions are founded upon the relation of the parties, creating an abnormally strong motive for perpetration of frauds upon creditors and affording exceptional opportunity therefor, and not upon their powers or disabilities respecting property, contracts and remedies.   (p. 293).

3. SAME.

   Money paid to an insolvent husband managing and conducting his wife's separate business, as for his salary, after ample allow-

ances for the support of himself and his family, and not shown to be in his possession, or to have been invested or paid on his debts, or otherwise disposed of, is presumed, in favor of a creditor of the husband, to have been put back into the wife's business and to be there held by her upon a secret trust for him.   (p. 293).

4.   SAME—*Remedies of Creditors—Decree.*

Under such circumstances, the decree should charge the property and business of the wife, in which the money is thus presumed to be held, with the creditor's debt, or so much thereof as the secret trust fund is sufficient to pay, and a personal decree against the wife, as for wrongful payment of money to the husband, is erroneous.   (p. 295).

Appeal from Circuit Court, Randolph County.

Bill in equity by James Fisher against J. W. Poling and others.   From a decree for plaintiff, defendants appeal.

*Modified, and remanded for execution.*

*Arnold & Arnold*, for appellants.

*A. M. Cunningham* and *Neil Cunningham*, for appellee.

POFFENBARGER, JUDGE:

The decree complained of on this appeal requires the wife of one of the defendants to pay a debt due from her husband, on the theory that she has taken the benefit of his services, in the management and prosecution of her business, to such an extent and in such manner as to make the contract of service between them a scheme, shift or device to defraud his creditors, and thus to render her liable for his debts to the extent of a portion of the value of the services so rendered.

Her husband, J. W. Poling, and one J. B. Burke, in April, 1913, purchased from its Greek owners, a business in the City of Elkins, known as the "Busy Bee Restaurant," at the price of about $1,800.00, and added furniture and fixtures worth about $200.00.   For part of the original purchase money, they gave their notes, one of which for the sum of $150.00, the plaintiff holds as assignee.   On June 16, 1913, Poling sold his interest in the business to Burke for about $500.00, which was paid in cash.   On July 8, 1913, Burke went into bankruptcy.   In the bankruptcy proceeding R. H. Allen was ap-

pointed trustee and as such sold the business to Mrs. J. W. Poling for the sum of $1,231.11, of which $410.37 was paid in cash and the residue deferred in two installments for six and twelve months, respectively, for which notes with personal security were given. At the date of the institution of this suit, one of these notes had been paid and there was a credit of $81.00 on the other.

Mrs. Poling claims she obtained $400.00 of the money with which the cash payment was made, from A. M. Poling, a brother of her husband. On September 24, 1913, there was deposited to her credit in the Elkins National Bank $410.37, the exact amount of the payment. On the same day, she gave her check to the trustee for that amount. She files a copy of a note for $400.00, dated September 23, 1913, signed by herself, as principal, and J. W. Poling, as surety, and payable to A. M. Poling. Her husband admits that, out of the money paid him by Burke, in June, 1913, he paid A. M. Poling $375.00, which he says was money he had borrowed from A. M. Poling with which to go into the business with Burke. He produced no note for the money he claims thus to have owed and paid, nor any memorandum or other evidence thereof. A. M. Poling's testimony was not taken. In the evidence of the plaintiff, there is a suggestion of his death. Mrs. Poling, at the time of her alleged purchase, had interest bearing deposits in two banks, amounting in the aggregate to $379.38, no part of which has been used in payment of purchase money of the restaurant business. Since the date of her purchase, her husband has managed the business, on an alleged salary of $65.00 per month, and, in addition thereto he has had the benefit of the table board of the family at the restaurant, for two meals a day during part of the time, and their entire board during the residue of the period of Mrs. Poling's alleged ownership. Against this account for salary, there is charged up as cash on account of money he has received from her and bills paid for him by her, a sum exceeding the amount credited, by at least $135.00.

On this state of facts, the circuit court denied the plaintiff right to charge the restaurant property with his debt on the theory of a purchase thereof by the husband in the wife's

name, and held the payments on account of the purchase price had been made by her with money derived otherwise than from her husband. Deeming her liable to his creditors for a portion of the value of his services, however, he referred the cause to a commissioner for investigation and findings as to the salary she had agreed to pay him and the amounts and manner of the payments made on account thereof. The commissioner reported a balance of $209.69 in favor of the wife. Exceptions to his report on the ground of wrongful allowance of credits to her, not because she had not made the payments claimed, but because, although made, she was not entitled to credit therefor as against his creditors, were sustained and these items struck out to the extent of nearly $600.00, and a decree was entered against her for $167.27, the amount of the note held by the plaintiff with the interest thereon.

Mrs. Poling assigns error in the decree pronounced against her, and the plaintiff cross-assigns error in the former decree denying him right to charge the restaurant property as property purchased by the wife with means furnished by her husband.

A somewhat lengthy examination of the authorities discloses no precedent for the decree in favor of the plaintiff. It does not charge the property proceeded against. It is purely personal, and stands upon a finding and conclusion stated in the decree as follows: ''The contract of employment made by the defendants * * * * was a scheme and device in fraud of the creditors of the said J. W. Poling * * * * and * * * the payments made to the said J. W. Poling upon said contract of employment, and upon the several debts created by him since the institution of this suit * * * were made in fraud of the plaintiff's rights and with intent to hinder, delay and defraud the plaintiff in the collection of his debt.''

If the alleged salary is predicated upon an agreement and has been earned and paid to the husband and his creditors, whether prior or subsequent, as the decree seems to admit, it is quite difficult to perceive any basis for a personal decree against the wife. If the husband has the money paid him for

salary, the creditor should find it and subject it. If it has been paid to other creditors, it is neither actually nor theoretically in the wife's hands. No analogy between such a situation and that of sale of fraudulently conveyed property to an innocent stranger, by a fraudulent grantee, is perceived, for, presumptively, the latter has the value of the property in his hands. *Vance Shoe Co.* v. *Haught,* 41 W. Va. 275; *Ringold* v. *Suiter,* 35 W. Va. 186; *Hinton* v. *Ellis,* 27 W. Va. 422; *Williamson* v. *Goodwin,* 9 Gratt. 503.

Though the personal decree cannot be sustained, it may be that right to a decree charging the property was shown. The close relation of husband and wife subjects them to drastic and exacting rules of inquiry, when a charge of fraud against creditors of either has been made, because the relation affords exceptional opportunities for the perpetration of such frauds, and furnishes an abnormally strong motive therefor. *Miller* v. *Gillespie,* 53 W. Va. 450, 463; *Burt* v. *Timmons,* 29 W. Va. 441. Nor does the statute enlarging the common law rights of married women relieve from the burdensome presumption against good faith in such of their transactions as are prejudicial to the rights of creditors. *Miller* v. *Gillespie,* cited.

An enumeration of the rules governing the inquiry, or the tests and standards of good faith, need not be made. A court of equity acknowledges no formal limitations upon its powers to uncover fraud. However solemn and technically complete a transaction may be, it declares it a fraudulent scheme, shift or device to defeat the rights of creditors, if it is found that the husband has placed his property in the name of his wife for such purposes, or that the wife has placed her property in his name and custody with such intent. Though a debtor is not bound to labor for the benefit of his creditors, if he does earn money or create value by his labor, skill or enterprise, he is not permitted to put it beyond their reach. *Boggess* v. *Richards' Adm'r.,* 39 W. Va. 567; *Trapnell* v. *Conklyn,* 37 W. Va. 242. If he conducts a business on capital supplied by his wife and in her name, and profits over and above the interest on the capital so furnished and the support of himself and his family, result, his creditors may subject the

excess to the payment of their debts. It is not regarded as being the mere increase of his wife's capital, but as value or gain arising from his industry, skill and labor, held by her upon a secret trust for him. He may withhold from his creditors enough of the fruits of his labor for the support of himself and his wife and children. His right to live and that of his family to their support from him are higher than that of his creditors.

The statutory enlargement of the rights of married women has wrought no material change in the status of the wife respecting the rights of the creditors of her insolvent husband. These statutes freed the wife's property from her husband's control and conferred upon her powers the common law denied her. In doing so, they have also enabled strangers to deal with her in ways and to an extent not formerly permitted. She can now contract and be contracted with, and sue and be sued, as if she were a *feme sole*. If she may now contract with her husband for his services or otherwise, as she could not have done under the common law, it does not follow that she may use that power to shield his property or the fruits of his labor from his creditors. In her hands, it has no greater virtue, efficacy or potency than it has in the hands of others. It secures neither to her nor to him anything more than it does to a brother, sister, father, mother, son, daughter or a stranger. The power of the wife to own and control property and to make and enforce contracts and become liable on them, has no necessary nor intimate connection with the rights of the creditors of the husband. Her full enjoyment thereof is consistent with the rights of others. Assuming her right to employ her husband and bind herself to pay him a salary, her lack of right to hold the surplus of that salary for him, to the exclusion of his creditors, is just as clear as it would be in the case of a stranger.

After ample allowance for house and room rent, cost of clothing, incidental expenses, two-thirds of the table expense for part of the time and all of it for the residue, lodge dues, and insurance premiums, the husband has apparently received $300.00 or $400.00 from the business. There are numerous entries of cash and checks against him, ranging from $5.00 to

$50.00. He impliedly denies possession of this money or any of it, for he says he owns nothing. Nor does he claim to have paid any of it on his indebtedness. Nothing in the evidence sustains the apparent recital of the decree that the cash charged has been paid on debts subsequently made. That he has paid none of his debts is a fair and just inference from the testimony of both himself and his wife. That the money has not been consumed in living expenses is equally clear. These facts point directly to concealment thereof in some form and place. For all that appears in the record, it may have gone back into the wife's business, and the charges made on the books may be no more than an incomplete record of its passage from her till to him and back again. For such a course of conduct, there is the strongest possible motive, and the presumption that the money was so handled is equally as reasonable as that the wife of an insolvent husband, acquiring property, has paid for it with the husband's money, a presumption she must overcome by clear proof, in order to maintain her title against an attack by his creditors. If, in this case, the money was not so returned, the fact could easily have been established. The general claim and protest that none of the husband's money has gone into the business is not fortified by any specifications of the disposition made of it. Such evidence does not suffice to overcome the presumption against good faith in other transactions between husband and wife to the prejudice of creditors, and, if it should be allowed to prevail here, a large opening for the consummation of such frauds would be made. Both husband and wife say the profits of the business are small. Nevertheless, though the former has taken out of it, for himself and the family, about $100.00 a month, it has paid nearly $500.00 of the purchase money in less than a year. This result tends strongly to justify the presumption of a return of the money charged. While no precedent found declares the existence of such a presumption, it is manifestly within the principle upon which courts of equity deal with alleged frauds upon creditors by husbands and wives, and must prevail, if not rebutted. Here it stands wholly unrebutted.

The decree, however, should have been against J. W. Poling

and J. B. Burke, personally, and should have declared the plaintiff's debt a lien on the property and funds used in Mrs. Poling's business, for the amount of the debt, since enough of the alleged salary of the husband to pay it presumptively remains in said business.

It will be modified so as to make it conform to this conclusion and the cause remanded for execution thereof.

*Modified, and remanded for execution.*