## In re Estate of Andrew Watson, deceased. Appeal of Susan Watson, Executrix.

*Trusts and trustees—Will—Legacy—Interest.*

Testator gave a sum of money to his daughter-in-law "in trust for her children borne by her to my son." Such a child was living at testator's death. A portion of the legacy was used in purchasing a property upon which the testator's son and family lived. The executrix loaned a part of the balance to testator's son. The trustee regularly sent to the executrix her receipt for interest, and in return the executor sent her receipt for the interest on the loan to the trustee's husband. *Held*, (1) that the trustee was entitled to the possession and control of the whole of the legacy, and such possession could not be postponed until her husband's death; (2) that as the exchange of receipts was a family arrangement the executrix after nineteen years' continuance of such arrangement was not chargeable with interest upon the balance which had not been directly paid over to the trustee.

Argued Nov. 4, 1898. Appeal, No. 114, Oct. T., 1898, by Susan Watson, executrix, from decree of O. C. Allegheny Co., June T., 1877, No. 87, directing trustee to pay over money. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Petition for an order upon executor to pay over money to trustee.

David S. McCann, the petitioner, was appointed trustee to fill the vacancy caused by the death of Frances Emma Watson, the trustee nominated in the will of Andrew Watson.

HAWKINS, P. J., found the facts to be as follows:

Andrew Watson, by will probated April, 1876, gave the sum of $4,000 to his daughter-in-law, Frances Emma Watson, in trust for her children born by her to his son, Andrew Alexander Watson, and that amount was accordingly so decreed on the audit of the account of Susan Watson, the executrix.  In 1877, the trustee was authorized by this court to invest $3,000 of this fund in a home for the children, and after the purchase had been made an additional sum was authorized to be paid for improvements. In April, 1876, the sum of $449.58 having been paid, trustee entered satisfaction in full, although there still remained $449.58 presumptively in the hands of the executrix.  But in the mean time Andrew Alexander Watson, husband of the trustee and father of the beneficiaries, appealed to the executrix for the balance then in her hands, $893.70, "stating to her that he was about to be indicted or prosecuted for a certain crime which would disgrace him, the said Andrew Alexander Watson, the balance of the said legacy, to wit: the sum of $893.70, taking the note of said Andrew Alexander Watson therefor, and the same to bear interest."  The trustee thereafter receipted to the executrix for the interest on said balance and received in exchange therefor the receipt of the executrix for the interest due from Andrew Alexander Watson; but no money in fact passed, and there is no evidence that the children enjoyed the benefit of it.  The claim made for interest prior to the loan to Andrew Alexander Watson was not pressed; but it is insisted that the executrix is liable for interest accruing since that time at the rate of six per cent and for the balance of principal, $449.58, remaining unpaid.  Andrew Alexander Watson had, at the time of testator's death, children "born by" Frances Emma Watson, and left children at his death in 1896.

The respondent insists that because there was a general residuary clause in her favor she had such an interest in the fund as gave a right to hold the fund until it appeared that there would be no more children born—in other words, until the death of either Andrew Alexander Watson or his wife.

The theory of detention suggested on behalf of the executrix as a defense is without merit. The testator made an absolute gift in trust for the children of his son, Alexander, "born by" his daughter-in-law Frances; there were objects in being in whom the beneficial interest vested, and there could consequently have been no question of lapse. And besides this, there was a trustee named whose appointment would otherwise have been vain and useless, in whom the legal title vested for whom it might concern in esse or posse, and whose right to receive the fund was adjudicated in the decree of distribution made by this court.

Assume that it was given contingently to a class, the income would belong to the members of the class for the time being, and after born children take from the date of birth: In re Holford, 7 R. (Eng.) 304; and therefore, even though the executrix had a right of retention until the class was complete, she would have been bound to raise and pay the income in the mean time, and the death of Alexander, leaving children, would fix her liability as respects the principal. In any aspect, therefore, she was liable.

The loan made by the executrix to Alexander was palpably inconsistent with testator's purpose. His gift is for his grandchildren, and his appointment of the daughter-in-law implied a want of confidence in his son, and exclusion from even handling the fund. He wished to insure their enjoyment of his intended bounty in any event, and in any contingency. The executrix evidently understood this, for the transaction was put in the form of a loan expressly providing for repayment to her. There is no evidence that the children ever derived any benefit, substantial or otherwise, from the fund while it remained in their father's hands. The disposition of it by the executrix was in form and equity no more than an investment, and must be regarded as having been made at her risk.

And now, to wit: April 22, 1898, this matter came on to be heard upon petition of David S. McCann, trustee, and answer thereto, and testimony taken, and was argued by counsel, and upon consideration thereof it is ordered, adjudged and decreed that Susan Watson, executrix of the will of Andrew Watson, deceased, pay to petitioner David S. McCann, trustee for children of Frances Emma Watson borne by her to Andrew Alexander Watson, viz:

| Balance, | . | . | . | . | . | . | . | $ | 446 | 85 |
| Int. thereon from April 2, 1896, to April 2, 1898, | | | | | | | | | 53 | 62 |
| Int. on $893.73 from Dec. 9, 1881, to April 2, 1896, | | | | | | | | | 767 | 54 |
| Total, | . | . | . | . | . | . | . | $1,268 | 01 |

Being balance of the principal and interest thereon of the legacy decreed to Frances Emma Watson in trust for her children at above number and term.  Costs to be paid by executrix Susan Watson.

*Error assigned* was decree of the court.

*Agnes F. Watson*, with her *James S. Young* and *S. U. Trent*, for appellant.—The legacy which is "the sum of $4,000, to Frances Emma Watson in trust for her children born by her to my son Andrew Alexander Watson," is plainly a legacy to a class : Denlinger's Est., 170 Pa. 104 ; Drakeford v. Drakeford, 33 Beav. 43 ; Reichard's App., 116 Pa. 232 ; Dewart's App., 70 Pa. 403.

The legacy was given direct to the trustee, and then the cestuis que trust pointed out, so the legal estate must have vested in the trustee, provided the trust was active : Ogden's App., 70 Pa. 507 ; Woerner, Law of Administration, sec. 434 ; Kirkland v. Cox, 94 Ill. 400 ; In re Miller, 155 N. Y. 646.

The income of the fourth and fifth legacies did not belong to the legatees till their majority, but formed part of the residuary estate and as such belonged to the widow as residuary legatee : Morton v. Woodbury, 153 N. Y. 243 ; Merkel's App., 109 Pa. 235 ; Yost's Est., 134 Pa. 426 ; Lupton v. Lupton, 2 Johns. Chancery, 614.

Where a legacy is given to such of a class as shall attain twenty-one, or when the youngest shall attain twenty-one, as between grandfather and grandchild the interest cannot be applied to the maintenance from the decease of the testator or till the bequest becomes absolute : 11 Vesey, 48 ; 2 Redfield on Wills, sec. 480 ; 1 Roper on Legacies, p. 333 ; Dial v. Dial, 21 Texas, 530.

A trustee should not be charged with interest from the date of the receipt of the money, but only from a reasonable time elapsed thereafter and only upon the balance of cash unneces-

sarily kept in hand. If an estate has not yielded interest a trustee is not chargeable with interest, unless he has negligently omitted to invest or has used the money himself: Griffith's Est., 147 Pa. 274; Vandever's App., 42 Pa. 74; Krogman's Est., 34 W. N. C. 104; Fleming's Est., 184 Pa. 85; Struthers v. Peltz, 18 Pa. 278.

*J. L. Ritchey*, for appellee.—A trustee can make no valid sale or pledge of the assets of his cestuis que trust, for the payment of his own debts, or debts of a third person. And if one deals with one standing in this fiduciary character, he is affected with notice, and is consequently participant in the breach of trust: Petrie v. Clark, 11 S. & R. 388.

Executors, administrators and guardians, and trustees generally, are chargeable with interest on funds that they improperly retain in their hands: Bruner's App., 57 Pa. 46; Lyons v. Chamberlin, 25 Hun (N. Y.), 49; McCall's Est., 1 Ashm. 357, Flintham's App., 11 S. & R. 16; Norris's App., 71 Pa. 106; Dyott's Est., 2 W. & S. 565; Light's App., 24 Pa. 180; Breneman v. Frank, 28 Pa. 479; Pennypacker's App., 41 Pa. 501: Biles's App., 24 Pa. 335; Lane's App., 24 Pa. 487.

OPINION BY MR. JUSTICE MITCHELL, January 2, 1899:

Appellant's argument as to the unpaid balance of principal of the legacy cannot be sustained. The legacy was to a trustee who was entitled to its possession and control. It is true that it was for the use of a class of cestuis que trust presumably not complete at the testator's death. But there was a representative living in whom the use immediately vested, subject to open and let in an after born participant, and who was entitled to the benefit of the whole income until such event should happen. In April, 1896, the appellant paid the trustee one half the then existing balance, and received an acquittance in full. Why this was done does not clearly appear, but as it is admitted that only one half was paid, the other half remained due, and appellant was rightly charged with it.

But the interest presents a different question. Appellant was the executrix of Andrew Watson, not primarily charged with any duty to invest the legacy, but to pay it over to the trustee named by the testator. She is not shown to have re-

fused to pay, but on the contrary it is said without contradiction that she desired to pay the balance into court, but was prevented by the trustee's objection. Nor is she shown to have made any profit out of the retention of the money. The loan of a part of the principal to Andrew Alexander Watson must be regarded as an investment at her own risk, and hence, as already said, she was rightly charged with the unpaid balance. But the interest was payable to the trustee for expenditure by her in behalf of the children. Payment to her would have been a full acquittance to appellant, without reference to the subsequent expenditure of the money by the trustee. If appellant had from time to time sent her checks to the trustee for the amount of the interest and the trustee had turned them over to her husband the appellant would nevertheless have been discharged, though his indorsements on the checks might have put her on notice of the use the trustee was making of the interest. As the discretion of the trustee in expending the income was not within appellant's control, she was not concerned with notice of the manner of its exercise. In substance this was just what was done. The trustee regularly sent to appellant her receipt for interest on the balance of unpaid principal, and in return the appellant sent her receipt for the interest on the loan to Andrew Alexander Watson. No money passed, but the effect was exactly the same as if it had. There was no difference whatever in substance, and it is to the substance of transactions that equity looks. The trustee and her husband were living together on a property purchased with the greater part of this legacy, on the order of the orphans' court, as must be assumed for the support of the children. The father was the head of the family, and his wife was the trustee with the discretion to expend the income of this legacy for the maintenance of the children. This condition of things continued for nineteen years, until the death of Andrew Alexander Watson in 1896. The whole transaction was conducted as a sort of family arrangement, and it lasted while the parties lived, although Frank F. Watson, one of the cestuis que trust was then thirty years of age and had been for nine years entitled to demand his half of the income free of the trust. So much did the arrangement bear that character that the last place to which Andrew Alexander Watson's note to appellant for the loan was traced

was the possession of his wife, the trustee. Family arrangements are not lightly to be disturbed even when they do not follow the strict law. If there was any default or breach of duty in this case it was by the trustee. It was not initiated by the appellant or continued by her for her own purposes, or to her profit, and it would be highly inequitable now to put the burden of the result on her.

So much of the decree as relates to interest on $893.70 from December 9, 1881, is reversed, and the decree directed to be amended accordingly. Costs to be paid one half by the appellant and one half out of the fund.