ANNIE FERIMER, *Executrix* v. LEWIS, HUBBARD & COMPANY, *a corporation*

(No. 7819)

Submitted February 15, 1934. Decided February 27, 1934.

*W. J. Daugherty* and *J. Howard Hundley*, for plaintiff in error.

*Payne, Minor & Ray*, for defendant in error.

WOODS, PRESIDENT:

This is an action by the executrix of the estate of G. Russak, deceased, to recover from Lewis, Hubbard & Company

$1,700.23, the balance collected by the latter on two series of notes delivered to it by decedent in accordance with a certain collateral agreement, dated May 1, 1925, after allowing for a certain bill of merchandise sold to Black Bird Mining Company on said date. The case was tried to the court in lieu of a jury. The plaintiff prosecutes error to a judgment for defendant.

It appears that H. J. Ferimer and Joseph Barna, during the latter part of April, 1925, organized and obtained a charter for the Black Bird Mining Company, and in the early part of May, 1925, took over and began to operate the abandoned plant of the Black Bird Coal Company, an insolvent corporation, in which both of the above named incorporators had been interested; that on May 1, 1925, Ferimer purchased from Lewis, Hubbard & Company for the Black Bird Mining Company, a bill of goods, amounting to $1,029.77, to stock the company store; that defendant required a guarantee before extending credit; that Ferimer got his mother-in-law, G. Russak, approximately seventy years of age, to put up a series of eighty-six $25.00 non-interest bearing notes, and a series of fifty-eight $10.00 interest bearing notes, totalling $2,730.00, secured by certain properties in Virginia. The agreement between G. Russak and the defendant provided, in effect, that the collateral was to secure the latter "of a certain indebtedness, being an account for merchandise, purchased by the Black Bird Mining Company, a corporation"; that the same would be returned, together with all money paid thereon, in event the account was paid or otherwise satisfactorily arranged; and that in event of default in payment of said account, the party secured shall apply any money paid on said notes or retain enough of said notes to cover amount of indebtedness, and return the remaining notes and money.

The Black Bird Mining Company went out of business in November, 1925, owing defendant around $2,500.00 on account. Defendant collected on the notes as they fell due. In December, 1928, G. Russak died. And in 1930, Mr. Guyer, the credit manager of defendant company, died. The notes have all been collected, except three of the $25.00 series which have been lost, misplaced or erroneously credited. Giving the

Black Bird Mining Company full credit for these three notes, and adding interest on the mining company's account, there is now due and owing to Lewis, Hubbard & Company, according to its contention, the sum of $446.31.

It was the contention of the plaintiff that the order of Black Bird Mining Company had been placed with the defendant prior to the latter's demand for security; and that the collateral was put up to secure such purchase, and that alone. In support of this Ferimer and another testified that G. Russak was advised as to the amount of the initial purchase before executing the agreement.

The defendant, however, took the position that the execution of the collateral agreement showed that the sale had not been consummated prior to that time, not to mention the positive testimony of its credit manager to like effect, and, therefore, that the agreement became uncertain when applied to the matter about which the parties are contracting—that there was a latent ambiguity. And, in support of its theory that the agreement could be construed as applying to a running account as consistently as to the purchase of May 1st, defendant was permitted, over objection, to introduce evidence showing that it had sold merchandise to Black Bird Coal Company, during its operations, on credit, but had a guarantee, and later, only for cash; that it was advised through certain credit agencies of a number of unreleased judgments of record in judgment lien docket against said company, Ferimer and Barna; that the assistant credit manager understood from an alleged conversation had, in his presence, between G. Russak and Mr. Guyer, just prior to the execution of the agreement, that a running account was intended; that Mr. Guyer, who signed on behalf of the defendant, instructed both the head bookkeeper and the assistant credit manager that the notes were given as security for a running account, and that the account was not to be permitted to exceed the amount of the security.

Courts, in the interpretation of contracts, if they be ambiguous, will look to the situation of the parties, the subject-matter of the contract, the acts of the parties thereunder, the purpose sought to be accomplished thereby, and the general circumstances attending its execution. *Bragg* v. *Peytona Lum-*

*ber Co.,* 102 W. Va. 587, 590, 135 S. E. 841; *Sycamore Coal Company* v. *Adkins,* 101 W. Va. 211, 215, 133 S. E. 330; *Watson* v. *Buckhannon, etc., Co.,* 95 W. Va. 164, 120 S. E. 390; *Knotts* v. *Bartlett,* 83 W. Va. 525, 98 S. E. 590; *Wetterwald* v. *Woodall,* 83 W. Va. 647, 98 S. E. 890; *Garrett* v. *Patton,* 81 W. Va. 771, 95 S. E. 437. But in so doing they must keep in mind that the only purpose for which evidence of surrounding circumstances is ever admissible is to interpret the writing. And so far as it tends to show not the meaning of the writing but an intention wholly unexpressed therein, it is irrelevant. 2 Williston, Contracts, secs. 618, 629; *Leckie* v. *Bray,* 91 W. Va. 456, 459, 113 S. E. 746; *Watson* v. *Buckhannon, etc., Co., supra.*

The language on the face of the collateral agreement imports a definite and existing indebtedness. There is nothing elsewhere in the agreement which purports to grant credit up to the extent of the face amount of the collateral. If we grant defendant's contention that the initial purchase was not consummated until after the execution of the collateral agreement, we are confronted with the admitted fact that an order was placed immediately thereafter. The Black Bird Mining Company was just on the verge of opening up operations, and was interested in stocking its store at the time of the execution of the agreement by G. Russak. And, although the order had not been actually accepted on condition that security would be forthcoming, it seems clear that such an order was in contemplation at the time of the negotiations. In other words, the sale was contemporaneous with the execution of the agreement. While there may have been some uncertainty as to just what the final extensions would be when the order was filled by the agents of defendant company, it is evident that Ferimer had a particular stock in mind before making his initial purchase. And, if the agreement was entered into in contemplation of the order of May 1st, such order must have been contemplated as the goods "purchased". Under such a construction the surrounding circumstances and the language of the agreement harmonize; where, to take the position that the writing covered a running account, the words "to be" must be read into it.

The testimony of the assistant credit manager as to his

understanding of the agreement and of the assistant credit manager and the chief bookkeeper, that Guyer subsequently informed them that the notes were to secure a running account, was clearly irrelevant to the issue, since it tended to show an intention not contemplated by the language used in the writing.

While a great deal of time has elapsed since the agreement was entered into, we cannot say that the inaction of the administratrix or her decedent amounted to a practical construction in favor of defendant's theory. There is nothing to show that G. Russak, who, so far as the record discloses, was a gratuitous guarantor, had any knowledge of the manner in which the defendant treated the account. Evidence was offered on behalf of plaintiff that the attorney for G. Russak called at defendant's place of business on one occasion prior to Mrs. Russak's death and that Mr. Guyer, the credit manager, refused to surrender any of the collateral.

From the record made we must reverse the judgment of the trial court, and remand the case that an order may be entered for plaintiff in accordance herewith.

*Reversed and remanded.*