CHRISTENA L. FISHER, *et al.*

*v.*

WEST VIRGINIA COAL AND TRANSPORTATION COMPANY, *et al.*

(No. 10439)

Submitted September 24, 1952. Decided December 9, 1952.

GIVEN, JUDGE, dissenting.

*Perry Emmet O'Brien,* for appellants.

*William H. Rardin, Howard R. Klostermeyer* and *Spilman, Thomas & Battle,* for appellees.

LOVINS, JUDGE:

The objects of this suit instituted in the Circuit Court of Mason County, West Virginia, are to obtain an injunction restraining the West Virginia Coal and Transportation Company, a Corporation, from further use of the surface of a 16 acre tract of land; to restrain such defendant from transporting coal mined from adjacent tracts through subterranean passageways in such tract of land; to obtain a decree of reference to a commissioner for the determination of the amount of damages plaintiffs are allegedly entitled to recover from the corporate defendant, a decretal judgment for such damages, and for general relief.

Christena L. Fisher, Harry B. Lewis, Leonard W. Lewis, Benjamin T. Lewis, Vina McDermitt, Rosa M. Lewis, Mary Lewis Roush, Rilla Lewis, Bertha Lewis, Frances Marie Lewis Miller and Leonard Franklin Lewis, Infant, by Frances Marie Lewis Miller, his next friend, who, except the next friend of the infant, are some of the heirs at law of B. T. Lewis, are hereinafter designated as plaintiffs. Plaintiffs who are the joint owners of the 16 acre tract of land, except the coal, instituted this suit against

the West Virginia Coal and Transportation Company, a Corporation, herein referred to as corporate defendant.

After the institution of this suit, Harvin A. Lieving and Hazel Lieving intervened as parties hereto, were made defendants and will hereinafter be referred to as individual defendants. The prayer of the individual defendants' answer and cross bill is omitted from the record and we are unable to state the relief sought by them.

The case was heard on the original and amended bills of complaint, the answer and cross bill of the individual defendants, 'the demurrer to the bills of complaint, the answer of the corporate defendant to the bills of complaint, the petition of the next friend of the infant party plaintiff, to be made a party, and upon depositions taken and exhibits filed on behalf of the parties.

Upon that record, the Circuit Court of Mason County dismissed the bills of complaint, found for the defendants and dismissed the answer of the individual defendants claiming affirmative relief and adjudged costs against the plaintiffs.

The tract of land in question, which according to survey, contains approximately 20.25 acres of land, but will be hereinafter designated as a 16 acre tract, was formerly owned by Elizabeth Harrison. Such owner and her husband, by deed bearing date the 18th day of December, 1908, conveyed to Millard Zirkle "all the coal underlying a certain tract of land, situate in Waggener District, Mason County, West Virginia, described by metes and bounds, estimated and said to contain 16 acres." By the same deed, the owner and her husband granted to Zirkle a tract of land within the exterior boundary lines of the 16 acre tract, containing approximately 1.32 acres but hereinafter referred to as a 1 acre tract and describing it as follows: " 'a little bottom opposite an old mine opening owned by Albert Hoffman, which said land is to be used as a coal yard for said Millard Zirkle'." Zirkle was also granted such right of way across the land conveyed as was necessary for the purpose of mining and removing the coal

thereunder, together with " 'all necessary mining rights and privileges necessary for the operation and removal of said coal and all subterranean rights and ways necessary or convenient for the proper working and mining of the coal under said land'."

By a subsequent deed bearing date the 10th day of April, 1914, Elizabeth Harrison and her husband conveyed the same land to B. T. Lewis, subject to the deed of conveyance from the owner and her husband to Zirkle.

B. T. Lewis died January 9, 1929, leaving a widow and a number of children. The widow died prior 'to the institution of this suit. One of B. T. Lewis' sons preceded his father in death. Two other of his children died prior to the institution of this suit. Another son of B. T. Lewis conveyed his interest in the land to a brother. According to the testimony of Christena L. Fisher, the plaintiffs in this suit are all the heirs of B. T. Lewis who have an interest or estate in the 16 acre tract. The land in question having come to plaintiffs under the law of descent and by purchase, they are now the owners of the land, subject to the rights conveyed to Zirkle by the former owner.

According to the oral testimony, Zirkle conveyed his interest in the land to Burke and Moffett by conveyance dated April 25, 1913.

The rights acquired by Zirkle under the deed of Harrison came into possession of the Interurban Land Company, a Corporation. The exact time and method by which the land was transferred to the Interurban Land Company is not clearly shown in the record.

The land was returned delinquent for non payment of taxes for the year 1937, and was sold to F. B. Lieving in the month of December, 1937.

The Clerk of the County Court of Mason County conveyed to F. B. Lieving, by deed bearing date the 5th day of May, 1939, the coal underlying the 16 acre tract, describing the same by metes and bounds and describing the 1

acre tract in the same words as are contained in the deed made by Elizabeth Harrison and her husband.

H. A. Lieving, referred to herein as Harvin A. Lieving, acquired the title to the same land from F. B. Lieving, by deed bearing date the 8th day of February, 1945.

The corporate defendant leased from Harvin A. Lieving and wife the right to mine and remove the coal underlying several tracts of land, including the 16 acre and the 1 acre tracts, by lease bearing date the 3rd day of October, 1947. Such lease provided in substance that the lessee could mine and remove the coal underlying the two tracts of land, and other lands not involved in this suit, granted necessary mining rights and privileges, with the right to transport coal mined from adjacent tracts of land through openings made in the coal underlying the land described in the lease, with certain other rights not material or necessary to mention.

In this suit, the record of another suit theretofore pending in the Circuit Court of Mason County, brought by the same plaintiffs as in the instant suit, against Harvin A. Lieving and F. B. Lieving, was introduced as an exhibit. In the former suit, the plaintiffs claimed that the 1 acre tract of land was conveyed by the Harrisons to Millard Zirkle for the purpose of using the same as a coal yard and that since he had abandoned the premises, the surface of the 1 acre tract was no longer owned by the successors in title of Zirkle.

In the former suit, the plaintiffs prayed that the deeds of conveyance from the Clerk of the County Court of Mason County to F. B. Lieving and from F. B. Lieving to Harvin Lieving, insofar as they affected the title to the 16 acre tract and particularly the 1 acre tract, be decreed to be of no effect as against them, and that the deed to Zirkle be declared a grant of a personal right to Zirkle to use such 1 acre as a coal yard. In that suit the Circuit Court of Mason County, in sustaining a demurrer, held in effect that Harvin A. Lieving was the owner of a fee

simple estate in the 1 acre tract of land. Thereafter, the plaintiffs, in the former suit, applied to this Court for an appeal which was denied.

Considerable testimony was taken to show the location and boundary lines of the 1 acre tract. It is bounded on the north, east and west by the curved course of Ten Mile Creek. The south line of the 1 acre tract runs along the foot of a hill. There is some evidence indicating that there was a fence formerly located along the foot of the hill and enclosing an old mine drift or opening within the boundary lines of the 1 acre tract. But the purpose and location of such fence are not clearly established.

The corporate defendant has erected several buildings and other installations on the 1 acre tract, especially a conveyor from the mine opening on the 16 acre tract, north and across Ten Mile Creek to its tipple located on other lands not here involved. There is proof tending to show that the installations and structures erected by the corporate defendant are located on the 1 acre tract. There is also proof tending to show that one of the structures erected and used by the corporate defendant encroaches upon the land outside the exterior lines of the 1 acre tract. The residue of the surface of the 16 acre tract seems to have been devoted to pasture and is covered by weeds and underbrush.

The plaintiffs allege in their bills of complaint that the coal underlying the 16 acre tract has been exhausted, or at any rate, abandoned by the corporate defendant. This allegation is not fully supported by the evidence introduced on behalf of the plaintiffs. The corporate defendant denies that the coal underlying the 16 acre tract has been exhausted; but admits that it has temporarily suspended the mining of the coal underlying the 16 acre tract and has moved the machinery located in that part of its mine to other parts thereof; that it intends to mine the coal under the adjoining tracts, and as the coal under those tracts is exhausted, and as it retreats or moves toward the opening located on the 16 acre tract of land, the coal in the 16 acre

tract will be mined. It is the contention of the corporate defendant that this is in accordance with good mining practices and principles.

The defendant introduced testimony to the effect that some of the plaintiffs live near the mining plant; that some of the other plaintiffs pass along the public road frequently, and thus knew the location and existence of the structures and installations; that the husband of one of the plaintiffs assisted in the construction of some of such installations. The husband, who is not a plaintiff, admits in his testimony that he was employed by the corporate defendant in erecting some of the structures on the 1 acre tract of land, and that it was on his suggestion that the corporate defendant extended its mining operations to other lands.

The corporate defendant shows that it has leased the coal underlying 1200 acres of land, and unless prevented, expects to operate the mine opening on the 16 acre tract, together with the installations and buildings on the 1 acre tract and their tipple, as a single mine project or undertaking.

It is admitted that coal from lands adjacent to the 16 acre tract is being mined; that such coal is being transported through the subterranean passageways underlying such tract; and that the installations and structures located on the 1 acre tract of land are used in processing and transporting coal so mined.

Plaintiffs contend that the defendants have no right to the use of the 1 acre tract of land for surface installations, that the corporate defendant has no right to transport coal through the subterranean passageways underlying the 16 acre tract, that they are entitled to damages for the illegal use of the land heretofore made by the corporate defendant.

The defendants, however, contend that they are using the surface of the 1 acre tract of land as a matter of right, one being the owner and lessor of such land and the other the lessee; that the coal not having been exhausted or

abandoned under the residue of the 16 acre tract, the corporate defendant has the lawful right to transport coal mined from adjacent lands and if plaintiffs have any rights, they are estopped from asserting them because the plaintiffs knew or had the means of knowing that the corporate defendant was making expensive installations and arranging to transport its coal as hereinbefore stated.

As hereinabove stated, the Circuit Court of Mason County, denied relief to the plaintiffs, dismissed their bills of complaint, and dismissed the answer and cross bill of the individual defendants without prejudice. From which decree plaintiffs only appealed.

This record presents three controlling questions: (1) Does the corporate defendant have the right to use the surface of the 1 acre tract of land for the purpose of transporting and processing coal mined from adjacent lands? (2) Does the corporate defendant have the right to use the subterranean passageways underlying the 16 acre tract for the transportation of coal mined from adjoining lands? (3) Are the plaintiffs estopped from maintaining this suit?

In the absence of a right arising out of contract, the corporate defendant has no right to use the surface of the 1 acre tract of land for transporting and processing coal admittedly mined from lands adjoining the 16 acre tract. See *Findley* v. *Armstrong*, 23 W. Va. 113, 122; Annotation, 48 A. L. R. 1406, 58 C. J. S., Title Mines and Minerals, Sec. 158, sub paragraph (d), 36 Am. Jur., Mines and Minerals, Sec. 177, 180.

But the result of the first suit between the plaintiffs and F. B. and Harvin A. Lieving is determinative of the fee simple ownership of Harvin A. Lieving of the 1 acre tract of land. There is no denial that Harvin A. Lieving has leased the 1 acre tract of land to the corporate defendant; the defendant is therefore occupying the surface of the 1 acre tract of land as the lessee of the owner. Such occupancy being under and by virtue of the lease to

the corporate defendant, is based on a contractual right with which the plaintiffs have no concern.

The evidence with respect to encroachment on the residue of the 16 acre tract of land by structures, installations and the drift mouth or mine opening is uncertain and indefinite. Some parts of the testimony may tend to show that at least one building encroaches approximately 8 feet and that the drift mouth or mine opening is located on the residue of the 16 acre tract.

It was the affirmative duty however, of the plaintiff to carry the burden of proof, showing such encroachment, as well as the fact that the drift mouth or mine opening is located on the surface of the land belonging to them. Such burden was not sustained by plaintiffs.

The trial chancellor has found that there is no encroachment on the residue of the 16 acre tract and has also found that one of the lessors of the corporate defendant is the rightful owner of a fee simple estate in the 1 acre tract. "The findings of the trial chancellor will not be disturbed on appeal unless clearly wrong." *Highland* v. *Davis,* 119 W. Va. 501, 195 S. E. 604; *Atwater & Co.* v. *Collieries Co.,* 119 W. Va. 549, 195 S. E. 99. The findings of the trial chancellor in the instant case are not clearly wrong.

The right of occupancy of the 1 acre tract is based on adjudicated findings by the trial chancellor that Harvin A. Lieving is the owner in fee of the 1 acre tract of land, and that there is no encroachment on the surface owned by the plaintiffs. We are of the opinion that the corporate defendant is rightfully occupying the surface of the 1 acre tract of land.

The next question relates to the use of the subterranean passage underlying the 16 acre tract of land for the purpose of transporting coal mined from adjoining lands. It is asserted by the plaintiffs in their brief that the corporate defendant occupies the land as a lessee and not by virtue of ownership of the coal underlying the 16 acres. We think that assertion is untenable for the reason that

the corporate defendant is the lessee of the owner of such coal and occupies the subterranean passages underlying the 16 acre tract and mines the coal thereunder by virtue of a lease executed by Harvin A. Lieving, the owner of the coal.

In the case of *Lillibridge* v. *Lackawanna Coal Co.*, (Pa.) 22, Atl., 1035, the Supreme Court of Pennsylvania held, after reviewing numerous authorities, that the grantee of coal in fee simple has the right to transport through the passageways or tunnels cut in the same, coal mined from adjacent lands, for the purpose of taking such coal through the passageway to an opening on lands of his own. The *Lillibridge* case was subsequently explained and qualified, by the case of *Webber* v. *Vogel*, (Pa.) 42, Atl. 4, in which it was held that the purchaser of a fee simple title to underlying coal with the right of way into, upon and under the land, for the purpose of mining the coal, is clothed with the right to haul coal mined from adjoining land through the passageways of his mine, so long as the coal underlying the land first mentioned, is not exhausted nor abandoned and is being mined with due diligence. *Cf. Westerman* v. *Pennsylvania Salt Manufacturing Company*, (Pa.) 103, Atl. 539. In the *Westerman* case, the following language is quoted from *Weisfield* v. *Beale*, (Pa.) 79 Atl. 878, 879: " 'When the defendant bought the coal in the Donley tract, he took a fee simple estate in the coal, and so long as that estate existed, he could haul through the gangways coal from other land. In so doing he was using his own property' ".

Paraphrasing that quotation, we hold that when the corporate defendant leased the coal in the 16 acre tract from the fee simple owner thereof, under the provision of a lease giving it that authority, it had the right to transport through the subterranean passageways coal mined from adjoining lands so long as the coal underlying the 16 acre tract was not exhausted or abandoned and the mining operations were conducted with due diligence. In so doing, he was using property leased from an owner other than the plaintiffs. See *Attebery* v. *Blair*, (Ill.) 91 N. E. 475.

We bear in mind that the grant of mining rights in the deed from Elizabeth Harrison and her husband to Zirkle is ambiguous in that it could be loosely construed to restrict such rights to the mining and removal of coal under the 16 acre tract. But, we do not think that such restriction is sufficiently clear to authorize a construction depriving Harvin A. Lieving and his lessee of the legal right to an estate in the coal and a qualified temporary right to use the passageways formerly occupied by the coal which has been mined. The words in the deed which allegedly restrict the mining rights to the 16 acre tract are not as certain and definite as those granting the rights, and we therefore do not apply them as a restrictive provision of the deed. *Miller* v. *Nixon*, 90 W. Va. 115, 110 S. E. 541. See cases applying a cognate principle, where in an instrument conveying a fee there are words allegedly restricting the estate granted, such words are strictly construed. *Cohen* v. *Securities Co.*, 96 W. Va. 676, 123 S. E. 793; *Cole* v. *Seamonds*, 87 W. Va. 19, 104 S. E. 747.

We have not heretofore cited any case decided in this jurisdiction relative to the precise question here presented. This Court however, in the case of *Armstrong* v. *Coal Co.*, 67 W. Va. 589, 607, 69 S. E. 195, where the sufficiency of certain mining rights became pertinent, cited the cases of *Lillibridge* v. *Lackawanna Coal Co.*, *supra*, and *Webber* v. *Vogel*, *supra*, with approval, and applied the doctrine of the *Lillibridge* and *Webber* cases.

In the case of *Robinson* v. *Iron Co.*, 99 W. Va. 435, 129 S. E. 311, it was held that "In view of the virtual ownership by the defendant of the land between the center of the earth and the stratum near the top of the surface, we have no doubt of defendant's right to use said passageways in such manner as will not unreasonably interfere with the enjoyment by plaintiff of his interest in the land." In arriving at the conclusion above quoted, this Court in the *Robinson* case considered the *Lillibridge, Webber, Attebery* and *Armstrong* cases.

We think that this court is committed to the doctrine enunciated in the cases of *Lillibridge* v. *Lackawanna Coal*

*Co., supra,* and *Webber* v. *Vogel, supra,* and hold that so long as the coal under the 16 acre tract is neither exhausted nor abandoned, and mining is being prosecuted with due diligence, that the corporate defendant, as lessee of the owner of such coal, may use the subterranean passageways for the transportation of coal mined from adjacent lands to an opening on lands owned by its lessor.

Neither abandonment of the coal under the 16 acre tract of land nor exhaustion thereof have been clearly shown. Nor is there a lack of diligent mining disclosed by the temporary cessation of the mining operations under the 16 acre tract of land. As disclosed by this record, the corporate defendant is conducting its mining operation in accordance with modern and approved practices. To require that all the coal should be removed at once from the 16 acre tract of land would allow the overlying strata of the earth to subside and block the underground passageways.

We have examined the cases of *Clayborn* v. *Camilla Red Ash Coal Company,* (Va.), 105 S. E. 117, and *Raven Red Ash Coal Co.* v. *Ball,* (Va.) 39 S. E. 2d 231. We adhere, however to the doctrine announced in the *Lillibridge* and *Webber* cases.

Defendants argue that the plaintiffs are estopped by their conduct in permitting the corporate defendant to proceed with erection of the surface installations on the 1 acre tract and its arrangements to mine coal from adjacent land, without objection, when the plaintiff knew or had means of knowing of the plans, purposes, intentions and actions of the corporate defendant.

The case of *Norfolk & W. R. Co.* v. *Perdue,* 40 W. Va. 442, 21 S. E. 755, is somewhat similar to the instant case. In the *Perdue* case, an alleged owner of the land who had worked on a certain tunnel of the railroad company, and after the construction of such tunnel, instituted an action asserting ownership of the land whereon the tunnel was constructed, was enjoined from prosecuting such action on the grounds of estoppel. This court in the case of

*Norfolk & W. R. Co.* v. *Perdue, supra,* stated the essentials of estoppel substantially as follows: "The essential elements constituting estoppel are * * *: *First.* There must be conduct, acts, language or silence amounting to a representation of, [or] a concealment of material facts. *Second.* These facts must be known to the party estopped at the time of said conduct, or at least the circumstance must be such that knowledge of them is necessarily imputed to him. *Third.* The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time when such conduct was done, and at the time it was acted upon by him. *Fourth.* The conduct must be done with the expectation that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. * * * *Fifth.* The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. *Sixth.* He must in fact act upon it in such a manner as to change his position for the worse. * * *" " 'The general rule is that if a person interested in an estate knowingly misleads another into dealing with the estate as if he were not interested, he will be postponed to the party misled, and compelled to make his representations specifically good.' " "* * * In the language of the most recent decision, to preclude the owner of land from asserting his legal title or interest under such circumstances, there must be shown either actual fraud, or fault or negligence equivalent to fraud, on his part, in concealing his title, or that he was silent when the circumstances would impel an honest man to speak," etc.

See the following cases for applications of the principles relating to equitable estoppel: *Williamson* v. *Jones et al.* 43 W. Va. 562, 572, 27 S. E. 411; *Despard* v. *Despard,* 53 W. Va. 443, 44 S. E. 448; *Urpman* v. *Lowther Oil Co.,* 53 W. Va. 501, 511, 44 S. E. 433; *Spradling* v. *Spradling,* 118 W. Va. 308, 190 S. E. 537; *Ballard* v. *Kitchen,* 128 W. Va. 276, 36 S. E. 2d 390. The facts and circumstances must put a person under the duty to speak. *Water Co.* v. *Browning,* 53 W. Va. 436, 44 S. E. 267, *Beard* v. *Collieries,* 103 W. Va. 240,

246, 137 S. E. 7. "To deprive an owner of the legal title to real estate by the application of that drastic doctrine, the basis therefor ought to be established by clear and convincing proof; and if that element of certainty is wanting there cannot be an estoppel." *Barnes* v. *Cole*, 77 W. Va. 704, 709, 88 S. E. 184. See *Delaplain* v. *Grubb*, 44 W. Va. 612, 30 S. E. 201; *Williamson* v. *Jones, supra, Water Co*. v. *Browning, supra.* There must be some overt act on the part of the person estopped in order to give rise to an estoppel by conduct. *McNeeley* v. *Oil Co.*, 52 W. Va. 616, 644, 44 S. E. 508. The person claiming estoppel must show that he relied on the conduct of the person against whom the estoppel is urged. *Belcher* v. *Huddle*, 120 W. Va. 276, 280, 197 S. E. 730. A person invoking estoppel must show that he was misled by the conduct of the person against whom that principle is waged. *Coal Co.* v. *Coal & Coke Co.*, 83 W. Va. 205, 98 S. E. 148.

There is no evidence showing that the corporate defendant relied upon the conduct of plaintiffs, or that it was misled by them. See *Bank* v. *Furnace Co.*, 109 W. Va. 176, 180, 153 S. E. 309. On the contrary, there are indications that the corporate defendant was cognizant of plaintiffs' claims. The corporate defendant may have acted upon the representation of the husband of one of the plaintiffs, but certainly his actions would not estop his wife and thus deprive her of any right.

Moreover, a contention that plaintiffs are estopped by their conduct is somewhat inconsistent with the defendants denial of plaintiffs' alleged rights which were ignored by the corporate defendant. If plaintiffs have no rights the doctrine of equitable estoppel is inapplicable. We discuss equitable estoppel for the reason that the principle is briefed and argued by the defendants on a state of facts which may show some of the elements of such estoppel, but the facts are not sufficient to warrant the application of that drastic doctrine and thus deprive the plaintiffs of their rights if such rights existed.

The exercise of the power of eminent domain and the

ascertainment of damages allegedly due plaintiffs briefed by them, are not relevant or pertinent and hence are not herein discussed.

For the foregoing reasons, the decree of the Circuit Court of Mason County is affirmed.

*Affirmed.*

GIVEN, JUDGE, dissenting:

Until the decision in this case I had believed that an owner of real estate in West Virginia had the sole and absolute right to the use thereof. Now I find that part of such right has been whittled away by court decisions, decisions of courts of other jurisdictions. The right so whittled away may be of little significance to the plaintiffs in the present case. On the other hand, it may effectually destroy, for many decades, the most beneficial use to which the remainder of their land can be put. The location and operation of a large mining plant in the immediate vicinity, which, we may assume for illustration, could not be operated at that place without the right of which the plaintiffs are now deprived, will effectually interfere with the uses to which the owners may desire to put their land, and probably destroy any sales or economic value thereof.

The majority opinion is founded upon the case of *Lillibridge* v. *Lackawanna Coal Co.*, 143 Pa. 293, 22 A. 1035, 13 L. R. A. 627, 24 Am. St. Rep. 544, but the majority attempts to draw support from the cases of *Robinson* v. *Iron Co.*, 99 W. Va. 435, 129 S. E. 311, and *Armstrong* v. *Coal Co.*, 67 W. Va. 589, 69 S. E. 195.

In the *Robinson* case it was merely held, as disclosed in the opinion, that "In view of the virtual ownership by the defendant of the land between the center of the earth and the stratum near the top of the surface, we have no doubt of the defendant's right to use the said passageways in such manner as will not unreasonably interfere with the enjoyment by plaintiff of his interest in the land."

The Court considered the defendant as owner of complete title to the whole land "between a stratum near the top of the surface, and the center of the earth * * *." This is clearly pointed out in the recent opinion of this Court in *Tate* v. *United Fuel Gas Co.,* 137 W. Va. 272, 71 S. E. 2d 65. This being true, there could be no question as to defendants' right to use the passageways. The Court simply applied the familiar rule to the effect that one may use his own property in any way he chooses, so long as he does not injure another. It is true that the Court, in the *Robinson* case, cited the *Lillibridge* case, but I think it was cited for illustration of the point involved, not as a persuasive authority.

In the *Armstrong* case the plaintiffs sought specific performance of an option contract, relating to a number of adjoining tracts of land. The question involved related to the sufficiency of mining rights as to those tracts of land only, not as to lands other than those included in the contract. There can be no doubt that the owners of the lands included within the option contract could convey any right owned by them. Only those rights were involved. True, certain statements contained in the opinion would tend to indicate approval of the rule laid down in the *Lillibridge* case, as limited by *Webber* v. *Vogel,* 189 Pa. 156, 42 A. 4, but such statements were unnecessary to the decision of the case.

Three of the seven Judges participating in the *Lillibridge* case dissented, and the holding in that case was sharply limited by the Pennsylvania Court in *Webber* v. *Vogle, supra.* Moreover, the Pennsylvania Court has refused to apply the principle in any situation except that relating to the mining of coal, as have all other Courts considering the question, in so far as I have been able to find. See *Webber* v. *Vogel,* 159 Pa. 235, 28 A. 226, (reported as *Vogel* v. *Webber* in the Atlantic Reporter). It should also be noted, as was done in *Clayborn* v. *Camilla Red Ash Coal Co.,* 128 Va. 383, 105 S. E. 117, 15 A. L. R. 946, and in an article entitled Rights of Fee Simple Owner of Subjacent Mineral Stratum in the Containing Space, 32 W. V.

L. 242, that in the *Lillibridge* case the Court considered the facts to be "* * * that all the coal in the vein has not been taken out, or that the tunnel is opened on the bed-rock underneath the vein; on the contrary, it is alleged that the tunnel has been cut through the coal, by which we understand it is the very body or substance of the coal which was bought by the defendant." Thus, it clearly appears that the actual holding in the *Lillibridge* case is not authority for the position of the majority in the instant case.

In the *Clayborn* case, later followed in *Yukon Pocahontas Coal Co. v. Ratliff*, 181 Va. 195, 24 S. E. 2d 559, and *Raven Red Ash Coal Co. v. Ball*, 185 Va. 534, 39 S. E. 2d 231, 167 A. L. R. 785, the Virginia Court refused to follow the rule laid down in the *Lillibridge* case, discussed leading cases relating to the rule, and pointed out, in the following language, the illogical conclusions upon which the rule is based:

"It seems to us that a more pertinent and convincing question would have been this: If the defendant owned both the coal and the space, why did his right to the space terminate immediately when the coal was removed? A somewhat similar situation arises when one buys a standing tree. He gets the tree as a part of the real estate, with an easement for support and removal, but he does not acquire any corporeal right in the soil or in the space which the tree occupies. It seems to us that the true and perfectly patent principle is that when a man buys coal, whether he stipulates for the privilege of taking it out or not, he simply gets the coal, with the right to remove it. The coal is his property. As to that he has a corporeal estate just as he has in standing timber. Coal and timber become personal property as soon as they are severed. The right to mine and remove is an incorporeal hereditament, an easement expressed in or incident to the grant of the fee, and in the exercise of this easement the grantee has no more right to put an additional burden upon the servient estate than he would have to haul timber from an adjoining tract over a tract upon which he had bought

the timber with the right of removal. It is only fair to say that this view is directly challenged and rejected in the Pennsylvania case under consideration. The vital difference between the doctrine of that case and the conclusion we have reached is that the Pennsylvania case assumed that the conveyance of coal carries a corporeal interest in the walls containing the coal, as well as in the coal itself, whereas under our view this assumption is not warranted, and the conveyance carries a corporeal interest in the coal only, with an easement in the walls for support and removal.

"The reasoning of the Pennsylvania court in the later case of Chartiers Block Coal Co. v. Mellon, 152 Pa. 286, 25 Atl. 597, 18 L. R. A. 702, 34 Am. St. Rep. 645, cannot, in our judgment, be reconciled with the rule apparently approved, though, as shown above, not actually involved in the decision, in the Lillibridge Case. In the Mellon Case, dealing with the right of the surface owner to sink a shaft through an entry in coal owned by another to reach a deposit of oil below, it was held that when the surface owner has conveyed the coal under his land, his legal right of access to the strata underlying the coal is clear; that the grantee of the coal owns nothing but the coal and the right of access thereto and removal thereof; that when all the coal is removed the estate therein ends and the space occupied reverts to the grantor by operation of law; and that the grant of the coal does not convey any interest in the strata underlying it. * * *."

An analysis of the decisions dealing with the subject need not be undertaken here. That has been done thoroughly and clearly in an article by James W. Simonton, formerly Professor of Law of West Virginia University, and Stanley C. Morris, entitled, The Nature of Property Rights in a Separately Owned Mineral Vein, 27 W. L. Q. 332, wherein the authors conclude that the Virginia Court, in the Clayborn case, "arrived at the proper concrete result". See also an article entitled Mines and Minerals—Rights of Grantee of Coal to Use Underground Haulway Made in Mining the Coal, VII Virginia Law Review

404. In limiting the rule of the *Lillibridge* case, the Pennsylvania Court, in *Webber* v. *Vogel, supra,* stated: "* * * we do not intend that the rule in that case shall be extended beyond what was plainly decided. * * *. In nearly every case the instrument itself discloses the intention of the parties that the coal shall be mined; that is, that the subject of the grant shall soon be exhausted or consumed. It is severed from the under and over lying land for the purpose of turning it into money. It would not only be a perversion of the intention to merely use such an estate to reach other coal, but such use would be a continual menace to the stability of the surface. No owner of the upper land could tell when his estate would cease to be disturbed by workings underneath. It was intended to go no further in the case cited than to hold that, *while the purchaser of the coal was in good faith mining out his coal,* his right to the use of the space made vacant by his workings as they progressed could not be successfully obstructed by the owner of the surface; and not that by the purchase of the coal he obtained an undisputed and perpetual right of way under another's land. *The owner of the land above and below has a right to the reversion of the space occupied by the coal within a time contemplated by the parties when they sever that peculiar part of the land from its horizontal adjoiners."* (Emphasis supplied.)

While the majority bases its holding upon the rule in the *Lillibridge* case, it apparently refuses to apply the restrictions or limitations placed thereon by the Pennsylvania Court in *Webber* v. *Vogel, supra.* But, as I understand, the majority opinion permits the purchaser of the coal to use subterranean passageways so long as mining "is being prosecuted with due diligence", whether underneath the 16 acres or other tracts, provided "the corporate defendant is conducting its mining operation in accordance with modern and approved practices". Thus, the landowners' rights depend, not upon their deed, but upon proof of "modern and approved practices". If "modern and approved practices" permit the mining of the coal vein from

the distant tracts first, whatever that distance may be, and notwithstanding title to such distant tracts may have been acquired by the operator long subsequent to the deed for the tract through which the right to use the subterranean passageway was claimed, as was done in the instant case, the owners can not complain. Clearly, I think, the majority has ignored the limitation of "good faith mining" of .the 16 acres, and has also ignored the right of the owners "to the reversion of the space occupied by the coal within a time contemplated by the parties" when they executed their deed, as required by the holding in *Webber* v. *Vogel, supra.*

In the instant case the majority opinion considers the language relating to the mining rights contained in the deed conveying the coal to be "ambiguous in that it could be loosely construed to restrict such rights to the mining and removal of coal under the 16 acre tract." The deed conveys "all the coal underlying the following described tract of land", and its language relating to the mining rights is: "* * * and, doth grant all the necessary mining rights and privileges necessary for the operation and mining and removal of said coal and all subterranean rights and ways necessary or convenient for the proper working and mining of the coal under said land." I see no ambiguity in this plain, simple, everyday language. No word or clause of doubtful meaning is contained therein. The words "said coal" can not possibly be given any application other than to the coal conveyed. The words "the coal under said land" can be given no meaning or application that does not relate to the coal under the 16 acre tract. Coal under other or adjoining tracts is, in no manner, mentioned or referred to in the deed. Thus, if we apply the rule of the majority, the grantee took a right not merely omitted from the grant, but expressly excluded therefrom. No authority need be cited in support of the general rule to the effect that the intention of the parties to a deed, as disclosed by the language used therein, establishes its true meaning.

Another rule, *expressio unius est exclusio alterius,*

which is believed to have been ignored by the majority, is stated in 17 C. J. S., Contracts, Section 312, thusly: "The expression in a contract of things of a class implies the exclusion of all not expressed, even though all would have been implied had none been expressed." The language contained in the deed granted only the coal under the 16 acre tract, and granted only mining rights relating to "said coal". Necessarily, any other or further right could not be implied. Yet the majority says that the language had the effect of granting the further right to use the passageways through the 16 acre tract for the purpose of mining other coal from other lands, but to what extent, as to time or distance, it dares not say. In *Ferimer* v. *Lewis, Hubbard & Co.,* 114 W. Va. 629, 173 S. E. 264, this Court held: "Ordinarily, courts are not warranted in reading into contracts words which will add to or take from the meaning of the words already contained therein."

Being of the views indicated, I respectfully dissent.